UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 92-7264
_____


HELEN B. BARNES, M.D., ET AL.,

                                        Plaintiffs-Appellees,

                    versus

THE STATE OF MISSISSIPPI, ET AL.,

                                        Defendants-Appellants.


_____

Appeal from the United States District Court
for the Southern District of Mississippi
_____

(May 26, 1993)

Before JOHNSON, GARWOOD, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

        The State of Mississippi appeals a decision by the district court holding unconstitutional its law requiring minors in some cases to obtain the consent of both parents before getting an abortion.  The district court entered a preliminary injunction barring enforcement of the statute.

        Despite the recent efforts of a three-justice plurality of the Supreme Court, passing on the constitutionality of state statutes regulating abortion after <u>Casey</u> has become neither less difficult nor more closely anchored to the Constitution.  <u>Planned Parenthood v. Casey</u>, ___ U.S. ___, 112 S. Ct. 2791 (1992).  That Mississippi's statute was carefully framed to steer among the

shoals of caselaw has simplified our task somewhat.  Further, based on the rationale for <u>stare</u> <u>decisis</u> articulated by the <u>Casey</u> plurality, we believe the "central holdings" of pre-<u>Casey</u> decisions remain intact and compel approval of this statute.  We vacate the preliminary injunction and remand for entry of an order of dismissal.

**I**

Subject to significant exceptions, the 1986 law, Miss. Code Ann. §§ 41-41-51 through 41-41-63, forbids an unemancipated minor to obtain an abortion unless she has the consent of both parents or the approval of the state Chancery Court.  In cases where the parents are divorced or are unmarried and separated, then only the consent of the parent with primary custody is required. § 41-41-53(2)(a).  Similarly, if only one parent is available in a reasonable time, only the consent of the available parent is necessary.  § 41-41-53(2)(b).  If the pregnancy was caused by sexual intercourse with the minor's father or stepfather, only the consent of the mother is required. § 41-41-53(2)(c).  Further, the statute permits abortions on minors without parental consent in cases of medical emergency.  § 41-41-57.

The law contains a judicial bypass provision allowing minors to circumvent the parental consent requirement by applying for approval in state court.  § 41-41-53(3).  If the minor is unable to satisfy the parental consent requirements or chooses not to follow that route, she may file a petition in Chancery Court for court approval to have that consent waived.  The statute mandates

2

that the state court proceedings be confidential and anonymous. A breach of confidentiality carries a criminal penalty. § 41-41-61. It further provides that the Chancery Court will rule on the petition within 72 hours after it is filed; otherwise the minor may go ahead with the abortion. § 41-41-55(3). The statute calls on judges to waive the parental consent requirement if 1) the minor is mature and well-informed enough to make the decision on her own, or 2) the abortion would be in her best interests. Finally, it provides for an expedited confidential and anonymous appeal of any denial of the waiver.

Pursuant to the statute, the Mississippi Supreme Court promulgated Rule 10.01 of the Mississippi Uniform Rules of Chancery Court. The rule specifies Chancery Court procedures for the consent waiver. In particular, it provides that the petition should contain an allegation that 1) the minor is mature and well informed enough to make the decision on her own, or 2) that one or both of the parents has engaged in a pattern of physical, sexual, or emotional abuse against her, or that notification of her parents would not be in her best interest.

The appellees, consisting of doctors and clinics, launched a facial challenge to the statute's constitutionality. The district court initially granted a preliminary injunction barring enforcement of the statute until the Mississippi Supreme Court promulgated its rules regarding parental consent waiver proceedings. The district court then stayed the proceedings for four years awaiting the outcome of various Supreme Court rulings on

3

abortion. In March 1992, it held the statute unconstitutional on the sole ground that the Mississippi Supreme Court's implementing rule unduly restricts a minor's access to an abortion. Accordingly, it denied the state's motion to lift the preliminary injunction on enforcement of the law. The state appeals.

## II

The appellees argue that this qualified two-parent consent/judicial bypass statute regulating abortion is unconstitutional. The statute is flawed, they contend, because requiring the approval of two parents does not serve any important state interest, unduly restricts a minor's access to abortion, and intrudes on the family's right to structure its relationships as it sees fit. For example, the statute gives one parent the power to veto the abortion even if the other parent consents to the procedure. This, they argue, has the effect of changing power relations within the family. The judicial bypass does not save the statute, in the appellees' view, because it involves too much judicial intrusiveness into a private family decision.

## A

The Supreme Court has upheld less intrusive parental consultation statutes in the past. Parental involvement statutes may be divided into four groups, in ascending order of the burden they impose on the minor's exercise of her limited right to an abortion: one-parent notification statutes, two-parent notification statutes, one-parent consent statutes, and two-parent consent statutes. The Court upheld a one-parent notification

4

statute in H.L. v. Matheson, 450 U.S. 398, 101 S. Ct. 1164 (1981). It upheld a two-parent notification statute that includes a judicial bypass provision, in Hodgson v. Minnesota, 497 U.S. 417, 110 S. Ct. 2926 (1990) (Kennedy plurality opinion).[1]  Finally, it upheld a one-parent consent statute, with a judicial bypass, in Planned Parenthood Ass'n of Kansas City v. Ashcroft, 462 U.S. 476, 103 S. Ct. 2517 (1983).  The remaining question is whether a two-parent consent statute impermissibly crosses the line so as to impose an undue burden on the minor's right to an abortion.  Casey, 112 S. Ct. at 2819 (plurality) (formulating "undue burden" standard for abortion regulations).

As noted above, the Court scrutinizes consent statutes more closely than it does notification statutes, and two-parent laws more closely than one-parent laws.  Thus, a two-parent consent statute arguably raises more serious questions than the other parental involvement statutes.  The appellees contend that the constitutionality of a two-parent consent/judicial bypass law is an open question.  Mississippi argues that the matter has been settled in favor of constitutionality.  Mississippi appears to have the better of the argument.

In Bellotti v. Baird, 443 U.S. 622, 637, 99 S. Ct. 3035 (1979), a fractured Court struck down a state law that required minors to obtain the consent of both parents before an abortion

---

1.    In Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 110 S. Ct. 2972 (1990) ("Akron II"), decided in tandem with Hodgson, the Court left open the precise question whether parental notification statutes require a judicial bypass provision.

5

could be performed. The plurality opinion struck the law down on the grounds that its judicial bypass provision was constitutionally inadequate. 443 U.S. at 645. However, the opinion stated: "We are not persuaded that, as a general rule, the requirement of obtaining both parents' consent unconstitutionally burdens a minor's right to seek an abortion." Id. at 649. In outlining the constitutional requirements for such a statute, the Court said: "We therefore conclude that if the state decides to require a pregnant minor to obtain one or both parents' consent to an abortion, it also must provide an alternative procedure whereby authorization for the abortion can be obtained." Id. at 643 (emphasis added). Thus, if the statute had contained an adequate judicial bypass the four members of the plurality stood ready to uphold it. A fifth, Justice White, was prepared to uphold the statute in Bellotti even without a judicial bypass. Id. at 657 (White dissenting).

Although the court in Bellotti did not uphold a two-parent consent statute, it did indicate that it would do so under different circumstances. The appellees urge that this statement amounts to dicta and need not be followed. That characterization of the Bellotti plurality was disputed by the plurality itself, 443 U.S. at 651 n.32, and was challenged just two years ago, Hodgson, 497 U.S. at 498 (Kennedy plurality).

Even if the comment on two-parent consent statutes in Bellotti is dicta it is persuasive dicta, particularly in light of Justice Kennedy's plurality opinion in Hodgson, 497 U.S. at 498.

6

There, he relied on Bellotti to uphold a two-parent notice requirement. Justice Kennedy argued that since Bellotti approved a two-parent consent statute with a judicial bypass, it follows that the less onerous two-parent notice statute must be constitutional. Id. at 498 (Bellotti "requires us to sustain the statute before us here"). Justice O'Connor, also citing Bellotti, joined the plurality on the broad grounds that a bypass provision tailors "a parental consent provision so as to avoid unduly burdening the minor's limited right to obtain an abortion." Id. at 461 (O'Connor concurring). Thus, five justices (Rehnquist, White, O'Connor, Scalia, and Kennedy) in Hodgson viewed Bellotti as settling the question in favor of the constitutionality of a two-parent consent/judicial bypass statute.

**B**

Even if Bellotti is not directly controlling, a two-parent consent statute with a judicial bypass is constitutional. An abortion regulation is unconstitutional only if it places an "undue burden" on the exercise of the right, that is, if it "has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion." Casey, 112 S. Ct. at 2820. Thus, a regulation that places a burden on the exercise of the right is constitutional unless the burden is "undue." The state may enact laws that are "calculated to inform the woman's free choice, not hinder it." Id. "Regulations which do no more than create a structural mechanism by which the State, or the parent or guardian of a minor, may express profound respect for the life of the unborn

7

are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose." Id. at 2821. As long as Casey remains authoritative, the constitutionality of an abortion regulation thus turns on an examination of the importance of the state's interest in the regulation and the severity of the burden that regulation imposes on the woman's right to seek an abortion.

Contrary to the appellees' contentions, the state does have an important interest at stake in parental involvement statutes. The state's interest, in part, is in ensuring that someone other than the immature minor and the abortion provider has a hand in making an important decision that fundamentally affects the minor's health and welfare. The Supreme Court has recognized that "the guiding role of parents in the upbringing of their children justifies limitations on the freedom of minors." Bellotti, 443 U.S. at 637. The Court has described as "deeply rooted in our Nation's history and tradition" the "belief that the parental role implies a substantial measure of authority over one's children." Id. at 638. "Legal restrictions on minors, especially those supportive of the parental role, may be important to the child's chances for the full growth and maturity that make eventual participation in a free society meaningful and rewarding." Id. at 638-39. Parental consultation is particularly important on the abortion decision, "one that for some people raises profound moral and religious concerns." Id. at 640. The child herself may be too immature to make the decision. And the abortion provider cannot be counted on to provide "adequate counsel and support . . . at an

8

abortion clinic, where abortions for pregnant minors frequently take place." <u>Id</u>. at 641.

The state's interest in <u>one-parent</u> consent statutes is clear: it is to protect children from their own immaturity and naivete as well as from the possibly deficient advice of those whose business is to provide abortions. Such statutes are plainly constitutional. <u>Casey</u>, 112 S. Ct. at 2832; <u>Ashcroft</u>, 462 U.S. 476. The state's interest is equally present in the two-parent consent context. Indeed, it is heightened because involvement of both parents in the decisionmaking might be thought to increase reflection and deliberation on the decision, especially where the parents live together.[2] Both parents, after all, ordinarily have a strong interest in helping to determine the course that is best for their child. A two-parent consent statute helps to safeguard the interests of both parents and the family unit. In short, "it cannot be said that the requirements serve no purpose other than to make abortions more difficult." <u>Casey</u>, 112 S. Ct. at 2833 (upholding clinic reporting requirements). The two-parent requirement injects more "information" into the decisionmaking process than a one-parent requirement. It is calculated to make the decision a more informed one. <u>Id</u>. at 2820. Further, it creates a structural mechanism by which both parents may express, if they so choose, "profound respect for the life of the unborn."

---

2. It must be emphasized that under Mississippi's statute, the consent of both parents is not required if they are divorced, unmarried and living apart, or if one of them is not available "in a reasonable time and manner."

Id. at 2821.  The important interests of the State and the parents in the regulation are undeniable.

Justice Kennedy eloquently expressed the interests of the state and the family in Akron II:

> It is both rational and fair for the State to conclude that, in most instances, the family will strive to give a lonely or even terrified minor advice that is both compassionate and mature.  The statute in issue here is a rational way to further those ends.  It would deny all dignity to the family to say that the State cannot take this reasonable step in regulating its health professions to ensure that, in most cases, a young woman will receive guidance and understanding from a parent.

497 U.S. 502, 110 S. Ct. at 2984.  We believe that this statement is valid notwithstanding the Casey plurality's reformulation of the right to an abortion and the distinction between Ohio's notification statute with judicial bypass and Mississippi's qualified two-parent consent-plus-bypass statute.

It remains to examine the burden thus placed on the minor's limited right to an abortion.  It is true that requiring the consent of both parents, as opposed to one, will incrementally increase the burden on the minor's exercise of her right to get an abortion.  There will be cases where one, but not both, of the parents will consent to the procedure.  Under a one-parent consent statute, that would be the end of the matter.  Under a two-parent consent statute, the child will have to go to court to obtain the abortion.  However, the bulk of the burden is in requiring the consent of even one parent, as a state is unquestionably entitled to do.  Once that objection is met the only issue is whether the

10

necessity of obtaining the second parent's approval crosses the constitutional line. Where the state supplies an expeditious process for obtaining court approval, the additional burden on the minor is greatly relieved. The parents still do not have a "veto" over the minor's decision, a consideration found dispositive in Planned Parenthood of Central Mo. v. Danforth, 428 U.S. 52, 96 S. Ct. 2831 (1976) (striking down one-parent consent statute that did not include bypass provision). Further, in cases where one parent withholds consent the minor will often have a willing supportive parent to accompany her to court. The view of one of the child's parents that the procedure should go forward will certainly be given great weight by the Chancery Court (because of the statute's confidentiality provisions, the second parent need not even know that court approval is being sought). Thus, the additional burden placed on the minor by requiring the approval of the second parent -- as opposed to requiring the approval of only one -- will be slight.

The abortion providers here also complain that in some cases a two-parent consent statute impermissibly intrudes on family decisionmaking by empowering courts to choose which of the two disagreeing parents will "win" the dispute over whether the abortion should go forward. There is more than a little irony in this position, coming from those who would prefer statutes that, by requiring neither parental consent nor notification, ignore the role of the family altogether. In any event, this argument overlooks the fact that the statute charges the Chancery Court to

11

decide what is in the minor's best interest, not which parent is right or has the better argument. The argument also ignores the alternatives to a two-parent consent statute, some of which increase the state's intrusion into family decisionmaking. In a one-parent consent statute, which is undeniably constitutional, a judge may often be in the position of overruling the wishes of <u>both</u> parents, not just one of them. And in a world without parental consultation statutes, the state, making its licensed doctors available to perform abortions on minors without any parental involvement whatsoever, would often foreclose the chance of any family decisionmaking.

Accordingly, a statute requiring the consent of a second parent, combined with an adequate judicial bypass mechanism, does not place an "undue burden" on a minor's right to seek an abortion. The Mississippi statute is facially constitutional.

**III**

The plaintiffs also challenge the Mississippi statute on the grounds that its bypass mechanism is constitutionally defective. The district judge agreed with the plaintiffs and struck the law down on this basis alone.

<u>Bellotti</u> demands that a parental consent statute contain a judicial bypass mechanism that allows the minor to show that 1) she is sufficiently mature to make the abortion decision independently of her parents' wishes, or 2) that if she is not able to make the decision independently, an abortion would be in her best interests. <u>Bellotti</u>, 443 U.S. at 643-44.

12

Mississippi's abortion statute tracks this language, providing the required grounds for waiver of parental consent. However, the Mississippi Supreme Court's Rule 10.01 is worded differently from the abortion statute and Bellotti. Whereas Bellotti and the statute require the court to consider whether an abortion is in the minor's best interest, the rule requires a minor to plead that notifying her parents of the abortion is not in her best interest. According to the appellees, this semantic difference from Bellotti is fatal to the statutory scheme. For several reasons, we disagree.

As the appellees point out, there may be an occasion on which an abortion would be in the minor's best interest but parental notification would also be in her interest. This might happen where the minor's parents are understanding and supportive (therefore, notification would do no harm) but have religious objections to abortion. In such a case, appellees contend, Rule 10.01 restricts the minor's access to the waiver and conflicts with Bellotti.[3] A parental consent statute using parental notification as the guidepost for the child's best interests might well be unconstitutional, Glick v. McKay, 937 F.2d 434, 439 (9th Cir. 1991), though we express no view on that issue. The question here is whether this procedural rule promulgated under the authority of

---

3.     Note, however, that in some cases Rule 10.01--if (improperly) read alone--would have the effect of increasing a minor's access to abortion. On at least some occasions, it will not be in the best interest of the minor to notify her parents and will also not be in her best interest to have an abortion. In such a case Rule 10.01, as it now reads, would result in a consent waiver. Note, too, that Rule 10.01 compels a court to grant the abortion if one parent has abused the child.

a facially constitutional statute renders the statute unconstitutional or unenforceable.

It does not. As a matter of Mississippi state law, the procedural rule cannot trump the substantive statute pursuant to which it was promulgated. Mississippi's courts must give effect to all constitutional laws passed by the legislature. <u>Kelly v. Mississippi Valley Gas Co.</u>, 397 So.2d 874, 877 (Miss. 1981). Here, the statute is plainly constitutional; the state courts must employ the substantive standards it sets forth. Mississippi's own Chancery Rules direct a court to follow state statutes if there is a conflict between the rules and a statute. Uniform Chancery Rule 11.01 ("If there be any conflict between these rules and . . . any applicable Mississippi statutes, the latter shall be followed."). Mississippi's Chancery Courts are bound to follow the statute, which requires them to inquire whether an abortion is in the minor's best interest.

The only possible constitutional dilemma inherent in this bypass rule will arise where the Chancery Court finds: 1) the minor is immature, 2) an abortion is in her best interests, and 3) there is no harm in parental notification. At oral argument in this court, however, the state clearly and repeatedly vouchsafed that it is the official position of the Attorney General of Mississippi that where a Chancery Court made those findings it would be required under Mississippi law to grant the minor's petition. This necessarily follows from the position taken in the state's brief that any inconsistency between the rule and the statute must, under

14

Mississippi law, be resolved in favor of the statute. Consequently, assuming Mississippi courts do their duty under state law, and we are not entitled to presume otherwise, the bypass procedure is not constitutionally defective.[4]

The appellees' interpretation of Rule 10.01 also suffers from a hypertechnical concern with the niceties of pleading. While the Rule establishes the kinds of allegations a minor must make to initiate a bypass of parental consent, it does <u>not</u> make those allegations, if proved, the sum and substance of the statutory "best interests" test. Rule 10.01 states that if the minor chooses to represent herself, her pleadings "shall be liberally construed . . . so as to do substantial justice." As the Court has stated:

> Even on the assumption that the pleading scheme could produce some initial confusion because few minors would have counsel when pleading, the simple and straightforward procedure does not deprive the minor of an opportunity to prove her case. It seems unlikely that the Ohio courts will treat a minor's choice of complaint form without due care and understanding for her unrepresented status.

<u>Ohio v. Akron Center for Reproductive Health</u>, 497 U.S. 502, 516-17, 110 S. Ct. 2972 (1990)

---

4. In holding that the pleading requirement of Rule 10.01 does not render the statutory scheme unconstitutional, we do not, as the dissent suggests, leave minors in Mississippi to drift in uncertainty over how to proceed in seeking a bypass. As has been noted, the substantive requirements of the statute itself guide the Chancery Courts and, hence, the petitioners before it. To obtain judicial consent, it is enough that the minor show that she can meet the substantive requirements of the statute, that is, that she is sufficiently mature to make the decision on her own or that an abortion is in her best interests.

15

There is yet another flaw in the appellees' reasoning. They have launched a facial challenge to the constitutionality of the statute. A facial challenge will succeed only where the plaintiff shows that there is <u>no</u> set of circumstances under which the statute would be constitutional. <u>Webster v. Reproductive Health Services</u>, 492 U.S. 490, 524, 109 S. Ct. 3040 (1989) (O'Connor concurring); <u>Akron II</u>, 497 U.S. at 514; <u>see</u> <u>also</u> <u>Rust v. Sullivan</u>, ___ U.S. ___, 111 S. Ct. 1759 (1991); <u>Barnes v. Moore</u>, 970 F.2d 12, 14 (5th Cir. 1992). Although it is imaginable that Mississippi courts might refuse to follow a statute enacted by the state legislature, that does not suffice to undermine the statute's constitutionality. If a Mississippi court does follow Rule 10.01 so as to conflict with <u>Bellotti</u>, a plaintiff will be free to launch an as-applied challenge to the bypass procedure. In the meantime, the Fifth Circuit is not a "roving commission[] assigned to pass judgment on the validity of the Nation's laws." <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 610-11, 93 S. Ct 2908 (1973).[5]

---

5. The dissent misapprehends our application of the no-circumstances principle to this case. Our position is not that the bypass scheme ought to be interpreted to exclude the minor who can show that an abortion is in her best interest but cannot show that notification is not in her best interest and, is therefore only unconstitutional when applied to some small subset of Mississippi minors. On the contrary, we believe the dissent misconstrues the statutory scheme when it concludes that the law will be unconstitutional as to those few minors under <u>all</u> circumstances. We have not voiced an opinion on the law as the dissent reads it because, properly interpreted and applied by the Chancery Courts, Mississippi law requires them to grant any minor a bypass <u>if an abortion is in her best interest.</u> Properly interpreted and followed, the law will be constitutional as to all minors in Mississippi. There will be no "unconstitutional impact upon a small percentage of the minors seeking to obtain judicial consent for an abortion." <u>See</u> ___ F.2d ___, ___, slip op. at ___, n.4 (Johnson dissenting).

16

Finally, the abortion providers argue that the Chancery Court system in Mississippi will be unable to implement the statute in a constitutional manner. They presented affidavits to the district court indicating that most court clerks are either unfamiliar with the bypass procedures or are completely unaware that a minor could obtain an abortion without her parents' consent.[6] They argue further that there are insufficient chancellors to hear cases and that court-appointed counsel will be difficult to obtain. They worry that true confidentiality will be difficult or impossible to maintain since court personnel in small towns will recognize minors coming to court seeking the parental consent waiver.

All of these objections might be appropriate in an as-applied challenge to the constitutionality of the statute. But to sustain a facial challenge, the plaintiffs must show that under no circumstances could the law be constitutional. Barnes, 970 F.2d at 14. Before the law is even implemented, this court is obliged to presume that state officials will act in accordance with the law. Akron II, 497 U.S. at 513 ("We refuse to base a decision on the facial validity of a statute on the mere possibility of unauthorized, illegal disclosure by state employees."). There is no demonstrated pattern of abuse or defiance here that would warrant the court to presume otherwise. Too, remand for an a

---

6. It is unsurprising that clerks in Mississippi courts would be unfamiliar with the statute since the district court, at the behest of these plaintiffs, has barred enforcement of the statute since its enactment.

_priori_ factual determination on whether a state was ready to implement its bypass procedure would likely draw upon "evidence" that is very speculative.

Moreover, this Court has once before encountered these plaintiffs complaining of intolerable conditions for the exercise of abortion rights in Mississippi. _Barnes_, 970 F.2d at 14. In _Barnes_, this Court turned away their facial challenge to a 24-hour waiting period. As in this case, the plaintiffs there argued that this Court should remand to the district court for an evidentiary hearing on whether the regulation imposed an "undue burden" on Mississippi's minors despite the fact that the Supreme Court in _Casey_ had upheld an almost identical Pennsylvania law. "Mississippi ain't Pennsylvania," the plaintiffs said. This Court refused to remand the case for an evidentiary hearing, ruling that a _facial_ challenge to a statute required more than a derogatory remark and brief about conditions in Mississippi. The same principle applies here.

### V

The Mississippi abortion statute is facially constitutional. Accordingly, this Court vacates the preliminary injunction and remands to the district court for entry of an order of dismissal.

**REVERSED** and **REMANDED** with instructions.

18

JOHNSON, Circuit Judge, dissenting:

This writer is compelled to agree with the majority's conclusion that the Supreme Court has voiced approval for a two-parent consent requirement with an adequate judicial bypass.[7] However, in my view, the judicial bypass procedure at issue in the instant case, as contained in both the statute and in the Mississippi Supreme Court's procedural rules, is constitutionally deficient. Accordingly, the instant dissent is made from the decision of the majority to vacate the district court's injunction against enforcement of Mississippi's parental consent statute.

The foremost flaw in the majority opinion is its refusal to come to grips with the real issue presented by this appeal--that being whether Mississippi's judicial bypass is adequate in the context of a parental consent statute. In fact, the majority opinion skirts around the issue to the extent that it is difficult to discern its actual holding. Portions of the opinion suggest

_____

7. A two-parent consent requirement has never been approved by the Supreme Court. In *Hodgson v. Minnesota*, 110 S. Ct. 2926 (1990), the Court did approve a two-parent notice requirement that provided for a judicial bypass. A majority of the Justices agreed that any legitimate state interest in requiring parental notification would be fully satisfied by a requirement that one parent be notified. *Id*. at 2945 (Stevens, J.). The requirement that both parents be notified was therefore held to be unconstitutional. The same would obviously be true for a two-parent consent requirement since consent requirements are much more burdensome than notice requirements and must be examined more closely. Nonetheless, a different majority in *Hodgson* held that a two-parent notice requirement, though unconstitutional standing alone, could nonetheless be saved by an adequate judicial bypass. *Id*. at 2970 (Kennedy, J.). While the issue was not before the Supreme Court, I must agree that this same majority strongly indicated that a two-parent consent statute with an adequate judicial bypass would also be constitutional.

that the challenged language in Mississippi's Rule 10.01 is indeed invalid because it conflicts with *Bellotti v. Baird*, 99 S. Ct. 3035 (1979), and with Mississippi's statutory requirements for the judicial bypass. If that is the majority's intent, the majority is actually only objecting to the district court's decision to continue the injunction rather than to surgically strike the offending language from the rule. It is difficult to believe that the majority intends this interpretation because that would make the bulk of the opinion nothing more than misguided dicta. Nevertheless, to the extent that this is the intended holding of the majority, this writer would whole-heartedly agree that the language in Rule 10.01 is invalid.[8]

On the other hand, portions of the majority opinion seem to approve Mississippi's parental consent procedure simply because the statute itself complies with *Bellotti*. According to the majority, the unconstitutional requirements set forth in Rule 10.01 are of no moment because the statute must "trump" the procedural rule. What the majority forgets--or at least ignores--is that the Supreme Court has made it clear that a two-parent consent requirement is unconstitutional.[9] Such a requirement can only be saved by an adequate judicial bypass. Because the procedural rule at issue is a part of the judicial bypass provided by Mississippi, this Court

8. This writer would still affirm the judgment of the district court for the precise reason given by Judge Wingate. Merely striking the offending language in Rule 10.01 would leave minors without direction on how to proceed or what to allege in their complaints.

9. *See supra* note 1.

cannot avoid passing on the constitutionality of the language contained in Rule 10.01. The district court held that the language in Rule 10.01 meant that Mississippi's judicial bypass was inadequate to save the two-parent consent requirement. Although the majority struggles mightily to avoid the issue, it is that precise holding of the district court that is now squarely presented for review.

Limitations on a Minor's Right to an Abortion

At this hour, it is beyond debate that the Constitution protects the right of every woman to decide whether and when to conceive and bear children, including the right to choose to continue or to terminate a pregnancy. *Planned Parenthood v. Casey*, 112 S. Ct. 2791, 2816 (1992). This right is in no way diminished by a woman's minority. *Hodgson v. Minnesota*, 110 S. Ct. 2926, 2936 (1990). Of course, as is the case for all other constitutional protections, a woman's freedom in this area is not unlimited. The Supreme Court has recognized that the State has legitimate interests in the health of the pregnant woman and in protecting the potential life within her. However, any attempts by the State to further its legitimate interests must be calculated to inform a woman's free choice, not to hinder it. "An undue burden exists, and therefore a provision of law is invalid, if its purpose or effect is to place a substantial obstacle in the path of a woman seeking an abortion before the fetus attains viability." *Casey*, 112 S. Ct. at 2821.

21

To be sure, where the woman seeking an abortion is an unmarried minor, the State has a special interest in encouraging her to seek the advice and counsel of her parents. *Hodgson*, 110 S. Ct. at 2942; *Bellotti v. Baird*, 99 S. Ct. 3035, 3046 (1979). However, a State cannot lawfully authorize an absolute parental veto over the decision of a minor to terminate her pregnancy. *Planned Parenthood v. Danforth*, 96 S. Ct. 2831, 2843 (1976). A parental consent requirement, although it would be unconstitutional standing alone, can nonetheless be saved by an adequate "alternative procedure" whereby authorization for the abortion can be obtained. *Bellotti*, 99 S. Ct. at 3048. In such an alternative proceeding, a pregnant minor is entitled to show either (1) that she is mature enough and well informed enough to make the decision herself <u>or</u> (2) that the abortion would be in her best interests. Additionally, to allow the minor an effective opportunity to obtain an abortion, all acceptable judicial bypass procedures must (3) insure anonymity and (4) be conducted with expediency. *Ohio v. Akron Center for Reproductive Health*, 110 S. Ct. 2972, 2979-80 (1990) (*Akron II*); *Bellotti*, 99 S. Ct. at 3048.

<u>Is Mississippi's Rule 10.01 Constitutional?</u>

The plaintiffs below admit that the statutory portion of Mississippi's judicial bypass complies with the standards set forth in *Bellotti*. The statute itself provides that parental consent shall be waived if the court finds either: "(a) [t]hat the minor is mature and well-informed enough to make the abortion decision on

22

her own; or (b) [t]hat performance of the abortion would be in the best interests of the minor." MISS. CODE ANN. § 41-41-55. However, the statute specifically directs the Mississippi Supreme Court to issue rules to insure that the bypass proceedings are handled in an "expeditious, confidential and anonymous manner." MISS. CODE ANN. § 41-41-55(6). And it is one of the procedural rules so promulgated that has given rise to this litigation. Mississippi Chancery Court Rule 10.01(4), the actual procedural rule attacked by the plaintiffs, states that the minor's petition for judicial authorization shall allege either or both of the following:

> (a) [t]hat the complainant is sufficiently mature and well informed to intelligently decide whether to have an abortion without the notification of her parents, guardian, or custodian;
>
> (b) [t]hat one or both of her parents, her guardian, or her custodian was engaged in a pattern of physical, sexual, or emotional abuse against her, or <u>that the notification of her parents, guardian, or custodian otherwise is not in her best interest.</u>

MISS. CH. R. 10.01(4) (emphasis added).

The district court found that Rule 10.01 stood in direct conflict both with the Mississippi parental consent statute and with the standards enunciated in *Bellotti*. The district court reasoned that the pleading requirements set forth in the rule impermissibly narrow the *Bellotti* standards because they would have the effect of denying authorization to some minors even though abortion would be in their best interests. The district court noted that simply correcting the rule by striking the offending language would leave minors without any guidance as to how to proceed or what to allege in their complaints. Therefore the

23

district court continued the injunction against enforcement of Mississippi's parental consent statute until Rule 10.01 is amended.

Mississippi argues before this Court that the language in Rule 10.01 must be constitutional because identical language was approved by the Supreme Court in *Akron II*. However, as the district court correctly noted, *Akron II* dealt with a <u>notice</u> requirement, while the instant case deals with a <u>consent</u> requirement. Consent statutes are by nature significantly more burdensome and imposing than notice statutes and must be attended with greater protection.

From a constitutional standpoint, the key consideration for any parental involvement requirement is whether it results in another person having an absolute veto power over a minor's right to have an abortion. *Danforth*, 96 S. Ct. at 2843. The Supreme Court has repeatedly held that where a minor is mature enough to make her own decision or where the abortion would be in her best interests she must be permitted to have the abortion. *Bellotti*, 99 S. Ct. at 3048. To the extent that a parental involvement statute results in veto power over a minor in either of these two classes, it is unconstitutional. Such a statute can nonetheless be saved by an alternative bypass procedure, if the bypass is adequate to ensure that minors in the two protected classes can obtain authorization for the abortion without any parental involvement.

A consent requirement like the one considered in *Danforth* expressly grants an absolute parental veto. Therefore, a consent

24

requirement will only be valid if accompanied by an alternative procedure that guarantees that minors in the protected classes will be able to have an abortion without parental consent. On the other hand, a parental notice requirement does not expressly grant absolute veto power. The Supreme Court has declined to equate notice with consent in all cases. *H.L. v. Matheson*, 101 S. Ct. 1164, 1172 n.17 (1981). Nonetheless, the Court has recognized that there are circumstances where a requirement of notice would be equivalent to a requirement of consent--for example, when parents hold strong views on abortion and could be expected to obstruct or prevent the minor from exercising her rights, perhaps by resorting to physical or emotional abuse. *See Hodgson*, 110 S. Ct. at 2945-46. To the extent that a notice requirement results in a parental veto and to the extent that this veto affects the two protected classifications of minors, the notice requirement would be unconstitutional. To save such a notice requirement, an adequate judicial bypass need only address those situations where notice can be the equivalent of consent--in other words, situations where notice would not be in the minor's best interests such as where the minor has been the victim of physical or emotional abuse.

Thus, in *Akron II*, it was constitutionally acceptable for Ohio to require a minor seeking a judicial bypass to allege either that she was mature enough to make her own decision or that one or both of her parents were engaged in a pattern of physical, sexual, or emotional abuse against her or that the notification of her parents was not in her best interests. The situations where notice would

amount to consent are amply covered by this language, and a notice requirement is only objectionable to the extent that it amounts to a parental veto for one or both of the protected classes of minors set out in *Bellotti*. Therefore, under the language in Ohio's notice requirement, any minor constitutionally entitled to a judicial bypass would be able to satisfy the pleading requirements.

When the same language approved in *Akron II* is applied to a consent requirement, however, the situation is very different. As the district court noted, under Mississippi's Rule 10.01, an immature minor who could show that an abortion was in her best interests but who could not show that notification of her parents was not in her best interests (as would be the case if she had understanding and supportive parents who nonetheless were opposed to abortion on religious grounds) would be unable to obtain authorization for an abortion. Therefore, the district court correctly held that Rule 10.01 "impermissibly narrows the standards deemed essential in *Bellotti*." Though identical language was approved by the Supreme Court as part of a notice requirement, the language in Rule 10.01 is invalid as a part of a consent requirement because it would result in some minors being unable to obtain authorization for an abortion even though the abortion would be in their best interests.

The Appropriate Remedy

The majority apparently does not disagree with this writer's view that the language in Rule 10.01 is unconstitutional. Yet the

26

majority holds that the district court's order should nonetheless be reversed because the language in the statute itself is constitutional. The majority notes that, under Mississippi state law, a procedural rule cannot trump a state statute. While this is an accurate assessment of Mississippi law, the majority's confidence that the statute and the rule necessarily conflict is misplaced. At the risk of being branded "hypertechnical," it seems entirely possible--albeit constitutionally impermissible given the language in Rule 10.01--for a state court to give effect to both. The pleading requirements set forth in Rule 10.01 are very different from the rules of decision found in the statute. For the purpose of this appeal, it is immaterial that the "official position" of the Mississippi Attorney General's office is that a court would be required to grant a minor's petition if she can show that an abortion would be in her best interests; a minor will never have a chance to make such a showing if she cannot satisfy Rule 10.01's pleading requirements.

It is clear that the language contained in Rule 10.01 impermissibly narrows the *Bellotti* standards for an adequate judicial bypass. As a result, Mississippi's judicial bypass cannot save the otherwise unconstitutional two-parent consent requirement. Given the conclusion that the language in Rule 10.01 is unconstitutional, the most sensible remedy is the one imposed by the district court--to continue the injunction until Mississippi amends Rule 10.01. Instead, the majority leaves the constitutional

27

infirmity intact and assures, with a sly wink and a nod, that no Mississippi court would actually follow the language in Rule 10.01.

In my view, the district court made the right decision when it continued the injunction against the enforcement of Mississippi's parental consent requirement until the offending language in Rule 10.01 was corrected. I would affirm the judgment of the district court in all respects.[10]

---

10. As an alternative ground for reversing the district court, the majority notes that this is a facial challenge to a statute. As such, the majority contends that it should only succeed if the plaintiffs have shown that there is no set of circumstances under which the statute would be constitutional. While the majority correctly quotes this principle of constitutional law, it completely misapplies it to the facts of this case. It is immaterial that Mississippi's regulations will only have an unconstitutional impact upon a small percentage of the minors seeking to obtain judicial consent for an abortion. "Legislation is measured for consistency with the Constitution by its impact on those whose conduct it affects. . . . The proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Casey*, 112 S. Ct. at 2829. In this case, the proper focus is on those immature minors seeking abortions who can show that an abortion is in their best interests but who cannot show that notification of their parents is not in their best interests. For the women in that group, the application of Rule 10.01 will mean that there is no set of circumstances where they will be able to obtain judicial authorization for an abortion.

The majority suggests that this dissent misunderstands its argument on this point. Even if so, this writer doubts that he will be the only one to misunderstand. But in the interests of increased understanding all the way around, let me be perfectly clear on my point: In a case like this, the majority's application of the "no-circumstances principle" is just plain wrong. Whatever the merits of such an approach in another context, virtually every abortion case to reach the Supreme Court since *Roe v. Wade* has involved just this type of facial attack on state regulation. *See, e.g., Planned Parenthood v. Casey*, 112 S. Ct. 2791, 2816 (1992); *Ohio v. Akron Center for Reproductive Health*, 110 S. Ct. 2972 (1990); *Hodgson v. Minnesota*, 110 S. Ct. 2926 (1990); *Webster v. Reproductive Health Servs.*, 109 S. Ct. 3040 (1989); *Thornburgh v. American College of Obstetricians & Gynecologists*, 476 U.S. 747 (1986).