# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 13, 2010

No. 09-10347

Lyle W. Cayce
Clerk

DAVID WALLACE CROFT, As Parents and Next Friend of their minor Children; SHANNON KRISTINE CROFT, As Parents and Next Friend of their minor Children; JOHN DOE, As Parents and Next Friend of their minor Children; JANE DOE, As Parents and Next Friend of their minor Children,

        Plaintiffs - Appellants

versus

RICK PERRY, Governor of the State of Texas,

        Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY and GARZA, Circuit Judges, and STARRETT,[*] District Judge.
E. GRADY JOLLY, Circuit Judge:

In this appeal, the plaintiffs, David and Shannon Croft and John and Jane Doe, parents of minor children who attend public schools in Texas, challenge the Texas pledge of allegiance, as amended to include the phrase "one state under God," and a provision of the Texas Education Code requiring students to recite the pledge daily. They seek injunctive and declaratory relief against Texas Governor Rick Perry, arguing that the pledge and education provision violate the

---

[*] District Judge of the Southern District of Mississippi, sitting by designation.

No. 09-10347

Establishment Clause of the First Amendment to the United States Constitution as incorporated by the Fourteenth Amendment.

On cross-motions for summary judgment, the district court found that the plaintiffs brought only facial challenges to the pledge, concluded that the pledge and education provision satisfy the Establishment Clause under any applicable test, and granted summary judgment in favor of the defendant. On appeal, the plaintiffs argue that the district court erred in treating their claim as a facial challenge; the plaintiffs also reassert their arguments that the amended pledge violates the Establishment Clause. Because we agree that the pledge and the education provision do not violate the Establishment Clause, we AFFIRM.

I.

In 2007, the Texas state legislature amended the Texas state pledge of allegiance to include, for the first time, the words "under God." As amended, the pledge reads, "Honor the Texas flag; I pledge allegiance to thee, Texas, one state under God, one and indivisible." Tex. Gov't Code Ann. § 3100.101 (West 2008). Under § 25.082 of the Texas Education Code,[1] students are required to recite the state pledge once daily unless excused by a parent. Tex. Educ. Code Ann. § 25.082 (West 2006).

---

[1] § 25.082. SCHOOL DAY; PLEDGES OF ALLEGIANCE; MINUTE OF SILENCE.

. . .

(b) The board of trustees of each school district shall require students, once during each school day at each school in the district, to recite:

> (1)   the pledge of allegiance to the United States flag in accordance with 4 U.S.C. Section 4, and its subsequent amendments; and
> (2) the pledge of allegiance to the state flag in accordance with Subchapter C, Chapter 3100, Government Code.

(c) On written request from a student's parent or guardian, a school district shall excuse the student from reciting a pledge of allegiance under Subsection (b).

This education code provision predates the current version of the Texas pledge.

No. 09-10347

Prior to passage the amendment underwent several rounds of debate in the state legislature and was subject to analysis by research committees from the state House of Representatives and Senate. In the course of debate, two purposes for inserting the phrase "under God" into the pledge were advanced. First, in the state House of Representatives, Representative Riddle, the bill's sponsor, explained that "there was something missing out of our state pledge because it wasn't consistent with our national pledge." According to her, "what this bill does, it simply replicates, mirrors our national pledge." When asked to amend the bill to include other language from the national pledge, such as "with liberty and justice for all," Representative Debbie Riddle declined, explaining that "it says what we wanted it to say" and that she "didn't think of" mirroring other parts of the national pledge.

Second, in the state Senate, Senator Dan Patrick, after pointing to references to God strewn throughout founding-era documents, expressed an intention to "acknowledge our Judeo Christian heritage by placing the words under God in the state pledge." Bill analyses prepared by the House and Senate research committees also identified acknowledgment of religious heritage as the primary purpose for the bill. According to the Senate committee, "[s]ince the founding of the United States through modern times, there has been a link to God in the political and social culture of the United States. . . . Placing the phrase 'under God' in the Texas state pledge may best acknowledge this heritage."

Before the district court, the plaintiffs argued that the amended pledge violates the Establishment Clause in four ways: (1) the pledge's use of the singular "God" impermissibly favors monotheistic over polytheistic beliefs; (2) the amendment does not have a secular purpose or effect, as any stated purpose is pretext for a religious motivation; (3) the pledge impermissibly endorses religious belief by affirming that Texas is organized "under God"; and (4) the

pledge's recitation in schools pursuant to § 25.082 of the Texas Education Code impermissibly coerces religious belief.

After reviewing the pledge's language and the legislative history, the district court rejected each of the plaintiffs' theories as to how the pledge violates the Establishment Clause and granted summary judgment to the defendant. On appeal, the plaintiffs argue that the district court erred in treating their complaint as a facial challenge, generally questioning the constitutionality of the statute, rather than as an as-applied challenge questioning the constitutionality of the statute as specifically applied to their children. The plaintiffs further argue and that the district court erred in holding that the pledge itself survived any constitutional attack.

We consider each of the plaintiffs' arguments separately.

## II.

We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court. *E.g.*, *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 270 (5th Cir. 2008). Summary judgment is appropriate where the submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## A.

At the outset of its opinion, the district court noted that the plaintiffs failed to identify whether their objection to the pledge was a facial challenge or an as-applied challenge. Because the plaintiffs showed no evidence of the manner in which the pledge was specifically administered unconstitutionally against them, as parents or as next friends of their minor children, the district court treated their challenge as facial and required that they "'show that under no circumstances could the law be constitutional.'" Dist. Ct. op. at 4 (citing *Barnes v. Mississippi*, 922 F.2d 1335, 1343 (5th Cir. 1993)).

4

The plaintiffs argue that applying this "heightened burden" was error, as there is no distinction between facial and as-applied challenges in the context of the Establishment Clause.  According to the plaintiffs, once an individual with standing challenges the government's conduct, that conduct is reviewed under one or all of the several tests used by the Supreme Court to identify Establishment Clause violations; no showing of unconstitutionality under all circumstances is required.

The plaintiffs are incorrect.  Both we and the Supreme Court have recognized the difference between facial and as-applied Establishment Clause challenges.  *See Bowen v. Kendrick*, 487 U.S. 589, 601–602, 620–21 (1988) (concluding that the Adolescent Family Life Act was facially constitutional, but remanding for consideration of its constitutionality as applied to "pervasively sectarian" institutions); *Henderson v. Stalder*, 287 F.3d 374, 380 n.6 (5th Cir. 2002) (denying standing for a facial challenge, but leaving open the possibility of standing on an as-applied challenge); *Jones v. Clear Creek Indep. Sch. Dist.*, 977 F.2d 963, 969 n.10 (5th Cir. 1992) (deciding the issue of facial constitutionality, but leaving open the possibility for an as-applied challenge). In fact, in a related case brought by these same plaintiffs challenging Texas's moment of silence statute, *Croft v. Governor of Texas*, 562 F.3d 735 (5th Cir. 2009), we declined to consider the hypothetical *Lemon* entanglements posed by the plaintiffs, pointing out that "speculative possibilities may be fertile ground for as-applied challenges if they occur," but were inappropriate on facial review. *Croft*, 562 F.3d at 750.

Because a distinction exists between facial and as-applied Establishment Clause challenges, we must consider where the plaintiffs' claims belong.  The Supreme Court has recently explained that where the "plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of th[o]se plaintiffs," the plaintiffs must "satisfy our standards for a facial challenge to the

extent of that reach." *John Doe No. 1 v. Reed*, 130 S.Ct. 2811, 2817 (2010) (citing *United States v. Stevens*, 130 S.Ct. 1577, 1587 (2010)).

As described above, the plaintiffs bring four Establishment Clause challenges. None are limited to the "particular circumstances of [the] plaintiffs," and so each is clearly a facial attack. The first three—sect preference, the *Lemon* test, and endorsement—are best construed as a facial challenge to the pledge itself, Tex. Gov't Code Ann. § 3100.101. The last—coercion—is best construed as a facial challenge to the education provision, Tex. Educ. Code Ann. § 25.082. Our conclusion that the challenges are facial attacks is confirmed by the relief sought by the plaintiffs: that the pledge be invalidated in its entirety, not merely that it not be applied to them or their children. To successfully mount a facial challenge, the plaintiffs must show that there is no set of circumstances under which either the language of the pledge or the requirement that children recite the pledge in classrooms is constitutional. If the plaintiffs successfully show either provision to be unconstitutional in every application, then that provision will be struck down as invalid.

### B.

Before turning to the plaintiffs' specific arguments, we will review national pledge precedent, which undoubtedly is relevant as Texas's use of the phrase "one state under God" was designed to mirror the "one nation under God" found in the pledge of allegiance to the United States flag.

The Supreme Court has never directly addressed the constitutionality of the national pledge, but has suggested in dicta, time and again, that the pledge is constitutional. *See Lynch v. Donnelly*, 465 U.S. 668, 676 (1984); *County of Allegheny v. ACLU*, 492 U.S. 602–03 (1989). The closest case to deciding the issue, *Elk Grove Unified School District. v. Newdow*, was resolved on standing grounds, but three justices would have upheld the pledge either as a recognition of the importance of religious beliefs to our founding, 542 U.S. 1, 32 (2001)

(Rehnquist, C.J.), or as a form of ceremonial deism, *id*. at 36 (O'Connor, J.). Even the majority described the pledge as "a public acknowledgment of the ideals that our flag symbolizes" and its recitation as "a patriotic exercise designed to foster national unity and pride in those principles." 542 U.S. at 6. Although dicta, we do take such pronouncements from the Supreme Court seriously. *See Peterson v. BMI Refractories,* 124 F.3d 1386, 1392 n.4 (11th Cir. 1997); *United States v. Becton*, 632 F.2d 1294, 1296 n.3 (5th Cir. 1980).

On the strength of these Supreme Court cases, the three circuits which have addressed the national pledge have found it constitutional.[2] In *Sherman v. Community Consolidated School District 21*, the Seventh Circuit explained that references to God in our nation's earliest history make clear that the founders did not "deem[] ceremonial invocations of God as 'establishment.'" 980 F.2d 437, 445 (7th Cir. 1992). In *Myers v. Loudoun County Public Schools*, the Fourth Circuit, also upholding the national pledge, noted that the inclusion of "under God" "does not alter the *nature* of the pledge as a patriotic activity" and poses "none of the harms" of "sponsorship, financial support, [or] active involvement . . . in religious activity," all of which are condemned by the Establishment Clause. 418 F.3d 395, 407–08 (4th Cir. 2005). In *Newdow v. Rio Linda Union School District*, the Ninth Circuit concluded that "both the purpose and effect of the Pledge are that of a predominantly patriotic, not a religious, exercise," 597 F.3d 1007, 1037 (9th Cir. 2010), and so upheld both the pledge and a school district policy of daily recitation under the *Lemon*, endorsement, and coercion tests.

With respect to the dicta of the Supreme Court and the holdings of these circuits that the national pledge is constitutional, the defendant argues that the

---

[2] We have also recognized, in dicta, the national pledge's likely constitutionality. *See Doe v. Tangipahoa Parish Sch. Bd.*, 473 F.3d 188, 198 (5th Cir. 2006); *Murray v. City of Austin*, 947 F.2d 147, 154–55 (5th Cir. 1991).

No. 09-10347

Texas pledge is "constitutionally indistinguishable" from the national pledge and urges us to follow the above cases. The plaintiffs, however, argue that the national pledge precedent is inapplicable here, as its adoption over fifty years ago is sufficiently historic to make it constitutional today.[3] Neither party is entirely correct. Under many tests, what also matters are the circumstances of the pledge's adoption, and in this regard the Texas pledge is constitutionally unique. When looking, however, to legitimate purposes for using the language "under God," as well as its likely effect when introduced into a pledge, analyses of the national pledge are relevant and not made less so by its age when compared to the youth of the Texas pledge.

With these persuasive cases as a backdrop, we turn to our review of Texas's state pledge.

### III.

In reviewing the constitutionality of a challenged government action under the Establishment Clause, we use a "multi-test analysis" that has "result[ed] from an Establishment Clause jurisprudence rife with confusion and from our own desire to be both complete and judicious in our decision-making." *Freiler,* 185 F.3d at 344. The plaintiffs point us to four "tests," each of which derives from a different Supreme Court case and each of which, they allege, is fatal to the Texas pledge. For reasons we explain, we hold that the pledge survives this constitutional challenge.

### A.

First, the plaintiffs argue that the pledge fails *Larson v. Valente's* no-sect-preference test, a test they style a "basic threshold criterion" for the constitutionality of government action. The pledge fails, they allege, because its

---

[3] Texas's amended pledge is only three years old.

reference to a singular "God" rather than the plural "gods" shows official preference for monotheistic belief over polytheistic belief.

"The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982). This command is violated when, for example, the government elevates particular religious imagery, thus "demonstrat[ing] . . . allegiance to a particular sect or creed," *County of Allegheny*, 492 U.S. at 603–05, or engages in legislative favoritism, thus "fail[ing] to exercise governmental authority in a religiously neutral way," *Board of Educ. of Kiryas Joel Village School Dist. v. Grumet*, 512 U.S. 687, 703 (1994). It is not, however, violated with "nonsectarian references to religion" such as "references to God in the motto and the pledge." *County of Allegheny*, 492 U.S. at 603. As Justice O'Connor has explained, this is because a "simple reference to a generic 'God' . . . does not refer to a nation 'under Jesus' or 'under Vishnu,' but instead acknowledges religion in a general way." *Elk Grove Unified School Dist.*, 542 U.S. at 42.

The plaintiffs provide no cognizable constitutional reason to reject Justice O'Connor's rationale as applicable in this case. The term God is adequately generic to acknowledge a wide range of religious belief, monotheistic and polytheistic alike. A reference to "God" may not reach every belief system, but it is a "tolerable attempt" at acknowledging religion without favoring a particular sect or belief. *Id*. We thus hold that the pledge's use of the singular "God" does not favor a particular faith in violation of the Establishment Clause.

### B.

Second, the plaintiffs argue that the pledge fails the *Lemon* test, which is perhaps the most criticized, but still the most widely-used, test for identifying Establishment Clause violations. Under *Lemon*, a statute violates the Establishment Clause if (1) it does not have a secular purpose, (2) its principal or primary effect advances or inhibits religion, or (3) it creates excessive

government entanglement with religion. *See Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971). The plaintiffs focus on *Lemon*'s first and second prongs. For the following reasons, we hold that the pledge satisfies both.

1.

Under *Lemon*'s first prong, the state must identify a secular purpose for the "under God" amendment to the pledge. The plaintiffs argue the legislative history demonstrates there was no secular purpose behind amending the Texas pledge to include "one state under God." Any purported secular interest in mirroring the national pledge was proved a sham, the plaintiffs contend, when the legislature refused also to include the phrase "with liberty and justice for all." According to the defendant, however, "the Legislature sincerely (and understandably) believed that simply tracking the language of the U.S. Pledge affirming that we are 'under God' was the safest and smoothest means of achieving its purpose to acknowledge our religious heritage." *Id*.

Courts are "normally deferential to a [legislative] articulation of a secular purpose." *Edwards v. Aguillard*, 482 U.S. 578, 587 (1987). Nevertheless, we do review to ensure that the alleged secular purpose is the actual purpose, *Wallace v, Jaffree*, 472 U.S. 38, 56 (1985); in other words, it "must be 'sincere'; a law will not pass constitutional muster if the secular purpose articulated by the legislature is merely a 'sham,'" *id*. at 64 (Powell, J., concurring), or "merely secondary to a religious one," *McCreary County v. ACLU*, 545 U.S. 844, 864 (2005). However, the statute need not have "exclusively secular" objectives to meet the sincerity standard; the touchstone is neutrality, and it is only "[w]hen the government acts with the ostensible and predominant purpose of advancing religion [that] it violates" the first prong of the *Lemon* test. *Id*. at 860. Importantly, "the eyes that look to purpose belong to an 'objective observer'," and require no "judicial psychoanalysis of a drafter's heart of hearts." *Id*. at 862. In sum, "openly available data [must] support a commonsense conclusion that a

10

religious objective permeated the government's action." *Id*. at 863. The purpose test is "rarely . . . determinative." *Id*. at 859.

There can be no doubt that mirroring the national pledge and acknowledging the state's religious heritage are permissible secular purposes. Acknowledgment of religious heritage, although religiously oriented, "is no less secular simply because it is infused with a religious element." *Freiler*, 185 F.3d at 345. The same is true of the defendant's mirroring rationale.

The legislative history is also persuasive in showing that these secular purposes were the *actual* purposes and not "sham" purposes devised to shield an actual motivation to advance Christianity. "In undertaking [a] 'sham' inquiry, we consider whether [the challenged action] furthers the particular purposes articulated by the [legislature] or whether the [challenged action] contravenes those avowed purposes." *Id*. at 344. For example, in *Wallace v. Jaffree*, Alabama amended its moment of silence statute from authorizing "meditation" to authorizing "meditation or voluntary prayer." 472 U.S. at 40. Because the existing statute adequately protected students' rights to engage in voluntary prayer, the Court refused to accept the purported secular interest in protecting voluntary prayer, inferring instead an intent to express endorsement for prayer activities. *Id*. at 59. Unlike *Wallace*, here the inserted language advances both of the defendant's asserted purposes, neither of which were satisfied under the prior version of the pledge. That one of the amendment's secular purposes could arguably have been better advanced by also incorporating "with liberty and justice for all" is irrelevant to our analysis.[4]

---

[4] Of course, if one legislator was motivated by a desire to advance religion, that is not enough to defeat other legislators' sincere interest in acknowledging the state's religious heritage; that "[s]ome legislators may have religious motives . . . does not invalidate an act with an otherwise secular legislative purpose." *Croft*, 562 F.3d at 742-43 (citing *Bd. of Educ. of Westside Cmty. Schs. v. Mergens*, 496 U.S. 226, 249 (1990)).

Ultimately, the alleged secular purposes in mirroring the federal pledge and acknowledging the state's religious heritage are not so "implausible or inadequate," *McCreary County*, 545 U.S. at 865, that they ought not be credited. Nor have the plaintiffs presented other evidence indicating that the secular purposes are a "sham" or "secondary" to some overriding legislative interest in coercing Texas's population into religious practice or reverence. Accordingly, we hold that the pledge satisfies *Lemon*'s first prong.

2.

Under *Lemon*'s second prong, a statute will be held unconstitutional if its principal or primary effect advances or inhibits religion. The plaintiffs argue that "requiring a declaration from school children that Texas is 'one state under god', or requiring school children who are not monotheists to sit and listen while teachers and other students recite that Texas is 'one state under God', advances monotheistic religion and inhibits polytheistic or non-theistic religions." As such, the pledge as recited in Texas schools "in fact conveys a message of endorsement or disapproval." *Lynch*, 465 U.S. at 690 (O'Connor, J., concurring). Strongly disagreeing, the defendant counters that "considered as a whole, the Texas Pledge, like the U.S. Pledge, is plainly a patriotic, rather than religious, exercise."

The statute's primary effect is "seen from the eyes of a reasonable observer, informed and aware of his surroundings." *Van Orden v. Perry*, 351 F.3d 173, 180 (5th Cir. 2003). Also, the challenged conduct must be viewed "as an entirety, and on its contextual history, not merely the portion . . . claimed to constitute a religious symbol." *Briggs v. Mississippi*, 331 F.3d 499, 506 (5th Cir. 2003); *see also Lynch*, 465 U.S. at 680. Some benefit flowing from state legislation or policy to religion is permissible: "not every law that confers an 'indirect,' 'remote,' or 'incidental' benefit upon [religion] is, for that reason alone, constitutionally invalid." *Lynch*, 465 U.S. at 683. Nor does the Establishment

Clause forbid statutes whose "effect merely happens to coincide or harmonize with the tenets of some . . . religions." *Id.*

At the outset of our analysis of the pledge statute, we rejected the argument that we must look to the primary effect of the amendment inserting the words "one state under God" rather than to the primary effect of the pledge as a whole. The Supreme Court has been plain that context matters. *See County of Allegheny*, 492 U.S. at 597 ("[T]he effect of the government's use of religious symbolism depends on its context." ). The whole of the thing always matters because "[f]ocus exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause." *Lynch*, 465 U.S. at 668. Accordingly, in *Briggs* we reviewed Mississippi's entire state flag, rather than just the inclusion of a St. Andrew's cross, 331 F.3d at 506, and in *Murray* we reviewed the City of Austin's entire city insignia, 947 F.3d at 156, rather than just the inclusion of a Latin cross.

Looking at the pledge as a whole, we find little reason to conclude that individuals who encounter the pledge could "fairly understand [its] purpose" to be the endorsement of religious belief. *County of Allegheny*, 492 U.S. at 594. There is no compelling reason to believe that with the inclusion of the words "one state under God," the Texas pledge—once a patriotic exercise—now primarily endorses religious belief in violation of the Establishment Clause. A reasonable observer would conclude that the pledge remains a patriotic exercise, intended to inculcate fidelity to the state and respect for its history and values, one of which is its religious heritage. Accordingly, we hold that the pledge satisfies *Lemon*'s second prong.

C.

Third, the plaintiffs argue that the pledge fails *Lynch*'s "endorsement test."[5] These arguments essentially reassert the arguments made relating to *Lemon*'s second prong, which we have discussed above. In brief, the plaintiffs argue, with feeling, that "[i]t borders on sophistry to suggest that the 'reasonable' polytheist public school child . . . would not feel less than a full member of the political community every time his fellow Texas classmates recited . . . a phrase he also believed to be false." The defendant, with bluntness, counters that the pledge "simply acknowledges, within a broader patriotic statement, a basic historic fact about our Nation: that religion was significant to our Founders and to their enduring political philosophy."

*Lynch v. Donnelly* tells us that the government runs afoul of the Establishment Clause when it endorses a particular religious belief, because "[e]ndorsement sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." 465 U.S. at 688. This endorsement analysis is similar to the second prong of the *Lemon* test. Under each we review to ensure that, irrespective of the actual purpose, government conduct does not "in fact convey[] a message of endorsement or disapproval," thereby "aid[ing] one religion, aid[ing] all religions, or favor[ing] one religion over another." *Freiler*, 185 F.3d at 346 (internal citation omitted); *see also County of Allegheny*, 492 U.S. at 592 (explaining the concern with endorsement as a refinement of *Lemon*'s second prong); *Briggs*, 331 F.3d at 506 (noting similarity and treating the tests together).

---

[5] As we have previously noted, the plaintiffs contend that the pledge violates the only the first two prongs of the three prongs of the *Lemon* test. Therefore, we need not address the third prong and continue by considering the plaintiffs' next assertion, that the pledge fails the *Lynch* endorsement test.

No. 09-10347

As discussed above, given the context, we conclude that the use of "under God" acknowledges but does not endorse religious belief. We thus hold that the pledge does not falter under *Lynch*'s endorsement test.

D.

Fourth, the plaintiffs argue that the provision mandating recitation of the pledge, *infra* n. 2, coerces religious belief as prohibited in *Lee v. Weisman*, 505 U.S. 577 (1992). According to the plaintiffs, having a teacher lead students in reciting the pledge exerts psychological coercion on dissenting students to participate. The defendant points out that the Court has limited its concern about psychological coercion to religious exercises, specifically prayer.

Certainly, "at a minimum, the [Establishment Clause] guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee*, 505 U.S. at 587. In *Lee* "State officials direct[ed] the performance of a formal religious exercise" at a graduation ceremony for a secondary school. The Court concluded that given the setting and degree of official involvement, "subtle coercive pressures exist[ed]," such that students could not avoid "the fact or appearance of participation." *Id*. at 588. Although not mentioned by the parties, we use a three-part test in applying *Lee*. "[U]nconstitutional coercion occurs when: (1) the government directs (2) a formal religious exercise (3) in such a way as to oblige the participation of objectors." *Doe ex rel. Doe v. Beaumont Indep. Sch. Dist.*, 173 F.3d 274, 285 (5th Cir. 1999). Application of this coercion challenge test favors the defendant: recitation of the pledge does not constitute "a formal religious exercise."

When identifying a "formal religious exercise," the "focus is on the [challenged conduct's] design, implementation, and effect, and not its purpose or goal." *Id*. at 290. Much like the endorsement test, religious components are placed in context and the ultimate question is whether "the religious component of any government practice or policy . . . overwhelm[s] the nonreligious portions."

15

*Id*. at 291.  In *Beaumont,* we concluded that a public school's use of clergy to provide counseling services to students constituted a formal religious exercise because the program consisted solely of clergy engaging in prototypical pastoral endeavors and activities.  *Id*. at 292.  Even though counseling services may be secular in nature, the exclusive use of clergy transformed the sessions into a religious exercise.

Here the state cannot be said to have coerced students to engage in a religious exercise.  A pledge of allegiance to a flag is not a prototypical religious activity.  And, as we have explained, despite the challenged "under God" amendment, the pledge's effect remains patriotic; its religious component is minimal and, when contextualized, clearly understandable as an acknowledgment of the state's religious heritage.  Nor, unlike the counseling services at issue in *Beaumont*, has the method of implementing § 25.082 tainted an otherwise secular activity: teachers, not religious figures, lead the students who choose to recite the pledge.  We thus hold that the pledge still stands after applying *Lee*'s coercion test.

IV.

In summary, neither Texas's state pledge, Tex. Gov't Code Ann. § 3100.101, nor the provision of its educational code requiring its recitation by school children, Tex. Educ. Code Ann. § 25.082, violates the Establishment Clause.  The pledge is a patriotic exercise, and it is made no less so by the acknowledgment of Texas's religious heritage via the inclusion of the phrase "under God."  A pledge can constitutionally acknowledge the existence of, and even value, a religious belief without impermissibly favoring that value or belief, without advancing belief over non-belief, and without coercing participation in a religious exercise.  Texas's pledge is of this sort and consequently survives this

No. 09-10347

challenge.  Accordingly, the district court's judgment dismissing the complaint is

AFFIRMED.