PLANNED PARENTHOOD LEAGUE OF MASSACHUSETTS, INC., & others[1] *vs.* ATTORNEY GENERAL.

Suffolk. November 5, 1996. - March 18, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED, JJ.

*Abortion. Minor,* Abortion. *Constitutional Law,* Abortion, Equal protection of laws. *Due Process of Law,* Abortion. *Practice, Civil,* Intervention.

The balancing of interests standard, as set forth in *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629 (1981), is applied in deciding whether a statutory requirement of parental consent to or judicial authorization for an abortion sought by an unmarried minor is an unconstitutional burden under the Constitution of the Commonwealth on the minor's right to choose to have an abortion. [589-591]

Discussion of the nature of the burden on an unmarried minor's right to choose to have an abortion created by the parental consent or judicial authorization provisions of G. L. c. 112, § 12S. [591-592]

Where the State has an interest in the protection of the welfare of minors to ensure that an unmarried minor makes a truly free and informed decision whether to have an abortion or that the decision is supported by a judicial determination that it is in the best interests of the minor, the parental consent-judicial bypass provisions of G. L. c. 112, § 12S, are not, on their face, unconstitutional burdens on the minor's right to choose to have an abortion and do not violate the equal protection and due process provisions of the Constitution of the Commonwealth. [592-595]

The requirement of G. L. c. 112, § 12S, that an unmarried minor who seeks to terminate her pregnancy must obtain the consent of both her parents unconstitutionally burdens without sufficient justification the right of such a minor to choose an abortion, where the consent of one parent with a judicial authorization alternative adequately satisfies the State's interest in the protection of the welfare of minors. [595-599] LYNCH, J., dissenting, with whom O'CONNOR, J., joined. O'CONNOR, J., dissenting, with whom LYNCH, J., joined.

A proposed intervener did not demonstrate that its interest in certain litigation was not adequately represented by an existing party and intervention was not mandated by Mass. R. Civ. P. 24(a); further, there was no reason for this court to exercise its discretion under Mass. R. Civ. P. 24(b) to permit intervention. [599-600]

[1]Crittenton Hastings House & Clinic, Phillip G. Stubblefield, M.D., and Mary Moe, an unmarried pregnant minor who is a resident and citizen of the Commonwealth.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 25, 1995.

The case was reported by *Greaney, J.*

*John H. Henn (Sarah Burgess Reed* with him) for the plaintiff.

*Thomas A. Barnico,* Assistant Attorney General, for the Attorney General.

*Philip D. Moran* for Massachusetts Citizens for Life, Inc.

The following submitted briefs for amici curiae:

*Sarah R. Wunsch, Frances S. Cohen & Sarah H. Arnholz* for American Civil Liberties Union of Massachusetts.

*Rebecca C. Martin & Kathryn Kolbert* for Abortion Rights Fund of Western Massachusetts & others.

*Rebecca C. Martin,* pro se.

WILKINS, C.J. This case presents a challenge, on State constitutional grounds only, to the constitutionality of the requirement stated in G. L. c. 112, § 12S, that, with certain exceptions, a pregnant unmarried minor may not obtain an abortion in the Commonwealth unless either both of her parents consent or a judge of the Superior Court authorizes the medical procedure. The plaintiffs assert that § 12S violates due process, equal protection, and equal rights provisions contained in arts. 1, 10, and 12 of the Massachusetts Declaration of Rights. They seek an injunction permanently enjoining the enforcement of the parental consent or judicial authorization requirement of § 12S. They further contend that, even if their broad challenge fails, the requirement that both available parents consent to a child's abortion is unconstitutional.

The case is here on a reservation and report by a single justice of this court. The parties have filed cross motions for summary judgment, have asserted that there is no genuine issue of material fact, and have entered into stipulations that they accept as a record suitable for decision of this case on summary judgment. The single justice has also reserved and reported the question whether the motion of Massachusetts Citizens for Life to intervene as a defendant should be allowed.

The plaintiffs argue that § 12S is a facially unconstitutional burden on minors' fundamental rights. Additionally, the plaintiffs argue that evidence concerning the operation of

§ 12S shows that § 12S is unconstitutional as implemented. The stipulations contain extensive recitations of what the plaintiffs' witnesses would testify, if they were to be called as witnesses. The Attorney General has not agreed to the facts to which those witnesses would testify. Much of the proffered testimony concerns facts that are reasonably inferable in the circumstances, but there has been no showing or agreement that § 12S is not being implemented according to its terms. The appeal does not, therefore, present on behalf of a specific pregnant unmarried minor, or a specific class of such minors, a claim of unconstitutionality based on the application of, or failure to apply, § 12S to specific conditions or to circumstances of such a minor. The claim of unconstitutionality rests on the argument that, without justification, § 12S unavoidably creates undesirable delay and emotional tensions that burden a minor's constitutional right to choose.

Section 12S, which is set forth in relevant part in the margin,[2] provides that a physician shall not perform an abortion on an unmarried minor "unless [the physician] first

---

[2] "If a pregnant woman is less than eighteen years of age and has not married, a physician shall not perform an abortion upon her unless he first obtains both the consent of the pregnant woman and that of her parents, except as hereinafter provided. In deciding whether to grant such consent, a pregnant woman's parents shall consider only their child's best interests. If one of the pregnant woman's parents has died or is unavailable to the physician within a reasonable time and in a reasonable manner, consent of the remaining parent shall be sufficient. If both parents have died or are otherwise unavailable to the physician within a reasonable time and in a reasonable manner, consent of the pregnant woman's guardian or guardians shall be sufficient. If the pregnant woman's parents are divorced, consent of the parent having custody shall be sufficient. If a pregnant woman less than eighteen years of age has not married and if one or both of her parents or guardians refuse to consent to the performance of an abortion, or if she elects not to seek the consent of one or both of her parents or guardians, a judge of the superior court department of the trial court shall, upon petition, or motion, and after an appropriate hearing, authorize a physician to perform the abortion if said judge determines that the pregnant woman is mature and capable of giving informed consent to the proposed abortion or, if said judge determines that she is not mature, that the performance of an abortion upon her would be in her best interests. A pregnant woman less than eighteen years of age may participate in proceedings in the superior court department of the trial court on her own behalf, and the court may appoint a guardian ad litem for her. The court shall, however, advise her that she has a right to court appointed counsel, and shall, upon her request, provide her with such counsel. Proceedings in the superior court department of the trial court under this section shall be confidential and shall be

obtains both the consent of the pregnant woman and that of her parents" except in certain circumstances. If the parents are divorced, the consent of the parent having custody is sufficient. If one parent is dead or is "unavailable to the physician within a reasonable time and in a reasonable manner," consent of the other parent is sufficient. If parental consent to the performance of an abortion is sought but not obtained, or if the minor elects not to seek parental consent, a judge of the Superior Court, on petition or motion and after a confidential hearing, must authorize the abortion if "the judge determines that the pregnant woman is mature and capable of giving informed consent to the proposed abortion" or, if the minor is not mature, the judge must authorize the abortion if the judge determines "that the performance of an abortion upon her would be in her best interests."

We uphold § 12S against the plaintiffs' broad attack on the requirement of parental consent. A minor does not have the same freedom to act on her constitutional right to choose to have an abortion as does an adult woman. We conclude, however, that the requirement that a pregnant unmarried minor obtain the consent of both of her parents, if available, cannot survive the plaintiffs' constitutional challenge. We direct the denial of the motion to intervene of Massachusetts Citizens for Life.

1. *The broad challenge to § 12S.* In *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629 (1981), we considered the standard that we should apply in deciding whether the State had justified a burden that it had placed on a minor's fundamental right to choose whether or not to have an abortion. *Id.* at 655. We rejected the position that the State can justify regulations imposing such a burden only by demonstrating that the regulations serve a compelling State interest, preferring a more flexible, less mechanical balancing of interests. *Id.* at

given such precedence over other pending matters that the court may reach a decision promptly and without delay so as to serve the best interests of the pregnant woman. A judge of the superior court department of the trial court who conducts proceedings under this section shall make in writing specific factual findings and legal conclusions supporting his decision and shall order a record of the evidence to be maintained including his own findings and conclusions.

"Nothing in this section is intended to abolish or limit any common law rights of persons other than those whose rights it governs for the purpose of any civil action or any action for injunctive relief under section twelve U."

655-657. We concluded that the State's failure to fund medically necessary abortions, while funding all other medically necessary procedures (including services in connection with childbirth), invaded a woman's constitutional right of choice to a degree that was not counterbalanced by the State's interest in the preservation of potential life. *Id.* at 658-659. We concluded that the burden placed on the constitutional rights of a woman who cannot afford a medically necessary abortion but who wishes to have one, and who must, therefore, bear a child against her will, is so great, particularly when no comparable burden is placed on an indigent woman who elects to have a child and has public funds available to cover related medically necessary services, that the due process provisions of our State Constitution cannot countenance such a disparity.

In deciding the *Moe* case, we reached a conclusion under the Constitution of the Commonwealth that was different from that reached by the Supreme Court of the United States on substantially the same issue in *Harris* v. *McRae*, 448 U.S. 297 (1980). Our position was not based on language in the Constitution of the Commonwealth that differs substantively from that appearing in the Constitution of the United States. While we owe respect to conclusions reached by the Supreme Court interpreting language similar to that in our Declaration of Rights, ultimately we must accept responsibility for interpreting our own Constitution as text, precedent, and principle seem to us to require. In *Moe* v. *Secretary of Admin. & Fin., supra,* we could not follow the reasoning and accept the conclusion in *Harris* v. *McRae, supra.* We concluded that "our Declaration of Rights affords a greater degree of protection to the right asserted here than does the Federal Constitution as interpreted by *Harris* v. *McRae, supra.*" *Moe* v. *Secretary of Admin. & Fin., supra* at 651.[3]

In the case before us we must engage in the same balancing

[3]Our conclusion that the State Constitution provided greater protection concerning the funding of abortions than was due under *Harris* v. *McRae,* 448 U.S. 297 (1980), is not unique. Several other States have reached a similar conclusion. See *Committee to Defend Reprod. Rights* v. *Myers,* 29 Cal. 3d 252, 258 (1981) (restrictions violated privacy, due process, and equal protection provisions of California Constitution); *Women of the State* v. *Gomez,* 542 N.W.2d 17, 19 (Minn. 1995) (using strict scrutiny to rule that "a pregnant woman . . . cannot be coerced into choosing childbirth over abortion by a legislated funding policy" under privacy sections of Minne-

of interests that we used in deciding the *Moe* case. The constitutional right is the same as it was in the *Moe* case, but the burden on that constitutional right and the State's interest in the regulation of the exercise of that right are different. Here, the asserted burden on the constitutional right is the requirement of either (a) parental consent or (b) judicial authorization. It is, of course, crucial in justification of these alternative requirements that the person seeking to have an abortion is a minor. The State has an obvious interest in the welfare of minors and in the promotion of the interests of parents in the care and upbringing of their children. The question is whether those interests counterbalance the unquestioned limitation that § 12S imposes on a woman's constitutional right of choice.[4]

We consider first the nature of § 12S's burden on a minor's constitutional right to choose to have an abortion. Certainly, the operation of § 12S delays a minor's exercise of her constitutional right, and it is said that delay in obtaining an

---

sota Constitution); *Right to Choose* v. *Byrne*, 91 N.J. 287, 305-306 (1982) (ruling that restrictions violate fundamental right protected by equal protection provisions of New Jersey Constitution); *Planned Parenthood Ass'n, Inc.* v. *Department of Human Resources*, 63 Or. App. 41 (1983) (violation of equal privileges and immunities clause of Oregon Constitution), aff'd, 297 Or. 562 (1984); *Women's Health Ctr. of W. Va., Inc.* v. *Panepinto*, 191 W. Va. 436 (1993) (relying on unique provisions of West Virginia Constitution to rule constitutional violation). Other States considering the funding issue have not identified State constitutional provisions that provide greater rights. See *Doe* v. *Department of Social Servs.*, 439 Mich. 650 (1992) (statute comported with both due process and equal protection provisions in Michigan Constitution); *Fischer* v. *Department of Pub. Welfare*, 509 Pa. 293 (1985) (using rational basis analysis to rule no violation under equal protection, nondiscrimination, or equal rights amendment of Pennsylvania Constitution).

[4]Although there are several decisions in other States under State Constitutions on the issue we dealt with in *Moe* v. *Secretary of Admin. & Fin.*, 382 Mass. 629 (1981) (see note 3 above), there have been few State court opinions dealing with State constitutional challenges to a parental consent-judicial bypass statute. In 1996, a divided Supreme Court of California upheld such a statute against a challenge largely based on explicit State constitutional right to privacy provisions. *American Academy of Pediatrics* v. *Lungren*, 912 P.2d 1148 (Cal. 1996), rehearing granted and case deleted from official reporter. In 1989, the Florida Supreme Court, basing its decision on Florida constitutional provisions generally barring governmental intrusion into a person's private life, struck down a one-parent statute otherwise similar to § 12S. *In re T.W.*, 551 So. 2d 1186 (Fla. 1989).

abortion increases the risk to the minor. Moreover, it is reasonable to assume that pregnant minors may be fearful and anxious about seeking parental consent or judicial authorization and that delays in obtaining abortions result. Where the minor seeks the consent of her parents and obtains it, the delay attributable to the requirements of § 12S (apart from any delay caused by the minor's uncertainty or anxiety) need not be substantial.

If the minor does not seek parental consent or seeks it unsuccessfully, the minor wanting an abortion in the Commonwealth must obtain judicial authorization.[5] There is inevitable delay in such a process, although the judicial response to such requests, once made, is expeditious.[6] Moreover, the judicial bypass process can be traumatic for a young woman, even though the proceeding is confidential and lawyers are available to process applications through the court at public expense. The record shows that judicial authorization is nearly a certainty. There is no showing that judicial procedures are not carried out promptly in this Commonwealth, or that the necessity of seeing a judge, in spite of emotional concerns such as fear or nervousness, has deterred young women who want abortions from obtaining judicial authorization and thereby caused them to give birth to unwanted children.[7]

The State's interest in requiring parental consent or judicial authorization is, in principle, entirely compatible with the

[5]Some Massachusetts minors have obtained abortions in other States where parental consent or judicial authorization is not required. The record does not indicate that § 12S burdened any such minor's rights.

[6]Typically, the minor is at the court house for approximately two hours and before a judge for between fifteen and thirty minutes.

[7]For Federal constitutional purposes, proof of minors' emotional distress and unavoidable delay in obtaining judicial authorization would make no difference. See *Ohio* v. *Akron Ctr. for Reprod. Health*, 497 U.S. 502, 514 (1990). In his dissenting opinion in *Planned Parenthood League of Mass.* v. *Bellotti*, 868 F.2d 459, 469 (1st Cir. 1989), then Judge Breyer correctly anticipated the Supreme Court's conclusion in *Hodgson* v. *Minnesota*, 497 U.S. 417 (1990), based on his view of language in *Bellotti* v. *Baird*, 443 U.S. 622 (1979) (*Bellotti II*). He wrote: "[T]he Court's opinions in *Bellotti II* lead me to think it virtually inconceivable that the Court believes the Constitution requires a state to permit even immature minors to choose an abortion without *anyone's* (neither parent's nor judge's) consent" (emphasis in original). *Planned Parenthood League of Mass.* v. *Bellotti, supra* at 472. He based his conclusion on the following reasoning:

fundamental principle that stands behind *Roe* v. *Wade*, 410 U.S. 113 (1973). That principle is not one of facilitating abortion, but of respecting the privacy right of an individual in choosing an abortion. But the law generally recognizes that choice by a minor is not the same as choice by one of mature years. "[I]mmaturity, inexperience, and lack of judgment may sometimes impair [minors'] ability to exercise their rights wisely." *Hodgson* v. *Minnesota*, 497 U.S. 417, 444 (1990). See *Commonwealth* v. *Oakes*, 407 Mass. 92, 97 (1990). This concern that a minor's choice be truly free and informed is joined by other legitimate State concerns. A minor may seek parental consent, and the family unit will be strengthened. Parents can help their daughter select a competent physician to whom they may be able to provide helpful information. Parents can provide emotional support and counsel to their

> "There is no point in permitting appellants to prove the general facts about the statute's operation that they seek to prove, facts that amount to a showing that court hearings themselves may inhibit many minors from seeking permission for an abortion, that the hearings involve several days' delay, and that the process leads to nearly universal court approval of minors' petitions for abortions. There is no point because, assuming plaintiffs can make such a showing, I still do not see how one could reconcile a holding that the statute is unconstitutional with *Bellotti II*. In *Bellotti II* the Court held that the state may regulate abortions for minors, that no third party, such as a parent, may have a categorical 'veto' over a decision to have an abortion, but that a judge may review a decision (though the judge may withhold permission only if the minor is immature and the abortion is not in her best interest). 443 U.S. at 633-51, 99 S. Ct. at 3042-52." *Id.* at 471.

He added, along the same lines:

> "That even expeditious judicial proceedings might take several days, that their very existence might intimidate minors, that those most likely to feel intimidated are those least able to cope effectively with the judicial system, all would seem fairly obvious from the outset. And, had the Court intended to leave open the possibility that this type of showing would lead to a change of mind about the statute, it would not have said so explicitly that the statute was constitutional . . . ." *Id.* at 471-472.

In view of the Supreme Court's holding in the *Hodgson* case, upholding a statute substantially similar to § 12S in its requirement of parental or judicial authorization, the plaintiffs' omission of any argument based on the Federal Constitution is understandable.

daughter concerning the choice that is to be made, and continue to provide support after the choice has been made. Because, however, parental consent is primarily a way to ensure that the minor's choice is free and informed, it may not constitutionally be made an absolute precondition of the performance of an abortion. Such parental control would be a substantial intrusion on the minor's constitutional right to choose to have an abortion. The parents' interest in the welfare of their child cannot, therefore, control the abortion decision if the child is mature and capable of making her own decisions. For the minor who dares not or does not seek parental consent, and especially for the minor who seeks and does not obtain parental consent, neither the parents' interests nor the idea of strengthening the family unit can justify the intrusion.

The State has an independent interest in assuring that the decision to have an abortion is free and considered or is supported by a judicial determination that it is in the best interests of the minor. The minor is required to reflect on her decision whether to give birth to a child or to have an abortion. She may seek parental assistance in making the choice, thereby obtaining adult guidance, or she may appear before a judge to demonstrate she is mature and capable of making a decision or, if not, the judge will decide what is in the pregnant minor's best interests. Section 12S provides a means of assuring that either (a) the minor is mature enough to make a decision or (b) responsible adult judgment — parental or judicial — has been brought to bear on the choice.

A pregnant minor does not have the same freedom to act concerning an abortion as a pregnant adult. For years, the Commonwealth has had numerous laws protecting minors by limiting their rights in ways not applicable to adults.[8] The Commonwealth's traditional concern for the welfare of minors justifies the requirement that a pregnant unmarried minor (and not others) obtain parental consent or a judicial determi-

---

[8]See, e.g., G. L. c. 90, § 8 (application of minor for license to operate motor vehicle must have parental consent); G. L. c. 64C, § 10 (minors may not purchase cigarettes or tobacco); G. L. c. 138, §§ 34, 34A (minors may not purchase alcohol); G. L. c. 140, § 130 (prohibiting firearm sales to minors); G. L. c. 149, §§ 62, 64 (barring minors from work in certain employment); G. L. c. 207, §§ 7, 24, 25 (consent of available parents required for minor to marry); G. L. c. 234, § 1 (minors may not serve on jury).

nation either that the minor has made a mature decision or that an abortion is in the minor's best interests. The record does not show that this traditional concern is unwarranted in the case of an unmarried minor contemplating having an abortion or that the operation of § 12S fails to reflect this concern in a beneficial way.

The fact that virtually every minor who seeks judicial authorization of her decision to have an abortion obtains that authorization does not mean that judicial bypass of parental consent is unnecessary or irrational. At the least, that authorization helps assure that the choice is free and considered. We have no way of knowing how many minors elect to seek parental consent in order to avoid the judicial process, but it is unquestionable that § 12S tends to encourage, but not to require, the minor to seek support within her family. That is a worthwhile State interest. We will also never know how many young women initially decided to have an abortion and, after consulting a parent, changed their minds.[9]

The State's interests in support of § 12S have a stronger basis in legally and constitutionally grounded principles than the State's interest (preservation of expected life) implicated in the *Moe* decision. Moreover, § 12S's intrusion on the constitutional right to choose is considerably less consequential than the major, perhaps complete, discriminatory intrusion on the right to choose that was involved in the *Moe* case. We therefore conclude that § 12S's parental consent-judicial bypass provision does not, on its face, deny a pregnant minor due process of law.[10]

2. *Two-parent consent.* The requirement that, with certain

[9]Approximately two-thirds of the minors who elect to end their pregnancies in Massachusetts obtain parental consent. In 1990 the Superior Court recorded 897 petitions under § 12S; in 1991 there were 854. Some minors who would not otherwise tell one or both parents of their abortion decision have done so before the abortion, because of the requirements of § 12S.

[10]The claim that a pregnant unmarried minor is denied equal protection of the laws fails because the classification made by § 12S has a rational basis. The differences between an adult and a minor; between married, widowed, or divorced pregnant minors and an unmarried pregnant minor; and between the special considerations applicable to an abortion as opposed to some other intrusive medical procedure justify the special treatment that § 12S accords to an unmarried pregnant minor who seeks to terminate her pregnancy.

The due process and equal protection rights of physicians, counselling organizations, and clinics to perform abortions are different but no greater

exceptions, a pregnant unmarried minor must obtain the consent of both parents to her having an abortion, or else must seek judicial authorization, lacks sufficient justification to overcome the burden that the two-parent consent requirement places on the minor's constitutional right to choose.[11]

The two-parent consent requirement clearly applies in circumstances in which there can be no justification for burdening the minor's constitutional right to choose an abortion. If, for example, the parents have never married and have never lived together and one or both parents have never supported the child, or one or both have abused the child, the two-parent consent requirement stated in § 12S may nevertheless be applicable. Section 12S even seems to require two-parent consent to an abortion where the minor has been impregnated by her father. In such cases, neither the interest in assuring the free and considered choice of the minor nor the interest in assuring the minor's welfare is served by requiring the consent of both parents. The two-parent consent requirement operates only as a burden in such cases, a burden uncompensated by the further assurance of any interest the State may legitimately insist on.

Quite apart from specific instances in which the two-parent requirement is obviously unjustifiable, we conclude that the two-parent requirement is unconstitutional in all instances. This was the conclusion of the United States Supreme Court in *Hodgson* v. *Minnesota,* 497 U.S. 417 (1990). There, the Supreme Court said that a Minnesota statute that, with certain exceptions, required a physician to notify both parents at least forty-eight hours before performing an abortion on a

than those of a pregnant minor. See *Framingham Clinic, Inc.* v. *Selectmen of Southborough,* 373 Mass. 279, 285 n.11 (1977) ("For analytic purposes it does not seem to make a difference whether these grounds of invalidity are related to due process or equal protection"). Indeed, the burdens on physicians, counselling organizations, and clinics are less than that imposed on a pregnant minor.

The plaintiffs make no argument to us concerning the equal rights amendment.

[11]Several States have no provision at all concerning parental consent to an abortion. Most States that have a provision for parental consent require the consent of only one parent. Of the States that have a two-parent consent provision, almost all do not enforce it or have been enjoined from enforcing it. See Report of the American Medical Association's Council on Ethical and Judicial Affairs, Mandatory Parental Consent to Abortion, 269 JAMA 82, 85 (1993).

minor would be unconstitutional in the absence of a judicial bypass. *Id.* at 450. The Court said that "the requirement that *both* parents be notified . . . does not reasonably further any legitimate state interest" (emphasis in original). *Id.* The Court rejected as justifications for the two-parent requirement (a) the parents' concern for the child's welfare and (b) the State's interest in protecting the parents' independent right to determine and strive for what they believe best for their child. *Id.* at 452. "Neither of these reasons can justify the two-parent notification requirement. The second parent may well have an interest in the minor's abortion decision, making full communication among all members of a family desirable in some cases, but such communication may not be decreed by the State. The State has no more interest in requiring all family members to talk with one another than it has in requiring certain of them to live together." *Id.* The Court stated that to the extent a parental consent or parental notification provision legitimately supports the parents' authority to act in the minor's best interest, and thus "assures that the minor's decision to terminate her pregnancy is knowing, intelligent, and deliberate," that interest is fully served by notice to one parent. *Id.* at 450.

The parent who is notified "can then seek the counsel of his or her mate or any other party, when such advice and support is deemed necessary to help the child make a difficult decision. In the ideal family setting, of course, notice to either parent would normally constitute notice to both. A statute requiring two-parent notification would not further any State interest in those instances. In many families, however, the parent notified by the child would not notify the other parent. In those cases the State has no legitimate interest in questioning one parent's judgment that notice to the other parent would not assist the minor or in presuming that the parent who has assumed parental duties is incompetent to make decisions regarding the health and welfare of the child." *Id.*[12]

We agree with the reasoning the Court expressed regarding

[12]The dissent on this issue in the *Hodgson* case viewed a two-parent notification provision as tolerable because, unlike parental consent laws, a parental notice requirement "does not give any third party the legal right to make the minor's decision for her, or to prevent her from obtaining an abortion should she choose to have one performed." *Id.* at 496 (Kennedy, J., dissenting in part). The dissent described the distinction between parental

the two-parent notification requirement in the *Hodgson* opinion. It applies even more forcefully where, as here, the parents must consent to the abortion and not merely be notified of the physician's intentions to perform one.[13]

The question remains, however, whether the availability of a judicial bypass cures the unconstitutionality of the two-parent consent requirement standing alone.[14] The burden that § 12S places on a minor to seek and obtain the consent of both parents can force her, even when one parent consents, to turn to the judicial bypass for relief. That process admittedly imposes delay and emotional stress on such a minor. To require that a minor follow such a process when the purpose of parental consent is fulfilled by the consent of one parent is to burden the minor's constitutional rights without adequate justification. Parental consent may be constitutionally required not to satisfy any interest of the parent but to protect the minor's best interests. That is the statutory standard to which a parent must adhere (G. L. c. 112, § 12S) and the Federal constitutional standard that any parent must apply. See *Baird* v. *Attorney Gen.*, 371 Mass. 741, 748 (1977), citing *Planned Parenthood of Cent. Mo.* v. *Danforth*, 428 U.S. 52, 74 (1976). Once it is agreed, as the Supreme Court held in *Hodgson*, that this interest is fully served by one-parent consent with judicial bypass, then two-parent consent, even with judicial bypass, simply places a further burden on the minor's

consent and parental notification as fundamental. *Id.* See *H.L.* v. *Matheson*, 450 U.S. 398, 411 n.17 (1981). We deal here with consent, not notification.

[13]There will, of course, be situations, as Justice O'Connor's dissent points out, in which the involvement of both parents would be beneficial and would help the minor make an informed and deliberate choice. There will, however, be many situations in which the involvement of more than one parent would not be appropriate, imposing a burden uncompensated by any benefit to the minor. Because parental consent, even by one parent, is not, and cannot be, a precondition to the performance of an abortion, legislative pressure to bring the second parent into the decision burdens the exercise of a constitutional right without a compensating benefit.

[14]A majority of the Court in the *Hodgson* case thought that the availability of a judicial bypass cured the unconstitutionality of a two-parent notification requirement. See *Hodgson* v. *Minnesota, supra* at 497 (Kennedy, J., with whom Rehnquist, C.J., White, and Scalia, JJ., joined, concurring in the judgment in part, dissenting in part); *id.* at 461 (O'Connor, J., concurring in part and concurring in the judgment in part). Four Justices were of the opinion that the judicial by-pass procedure did not cure the unconstitutionality of the two-parent notification requirement. See *id.* at 455 (Stevens, J., dissenting in part); *id.* at 472, 479 (Marshall, J., dissenting in part).

right to choose, but without any sufficient justification for that additional burden. Thus, though we agree with the Supreme Court's premise, we cannot accept its reasoning from that premise in all respects.

3. *Motion to intervene.* An order should be entered in the single justice session denying the motion to intervene of the Massachusetts Citizens for Life (MCFL). MCFL's motion to intervene was timely filed. We shall assume that MCFL's interest in this case would warrant allowance of its motion to intervene even though it is not directly affected by the operation of § 12S. It is not, however, a parent of a pregnant unmarried minor. Nor can it be.

If the interest of an applicant for intervention is adequately represented by an existing party, intervention is not mandated by Mass. R. Civ. P. 24 (a), 365 Mass. 769 (1974). As this opinion demonstrates, the Attorney General has conscientiously and professionally represented MCFL's interests. MCFL has the burden (see *Attorney Gen.* v. *Brockton Agric. Soc'y,* 390 Mass. 431, 434 [1983]) of making a compelling showing of inadequate representation (see *Massachusetts Fed'n of Teachers, AFT, AFL-CIO* v. *School Comm. of Chelsea,* 409 Mass. 203, 206-207 [1991]). MCFL has made no such showing. The Attorney General appears in defense of the statute by express statutory authority (G. L. c. 12, § 3) and with broad authority to represent the public interest. See *Feeney* v. *Commonwealth,* 373 Mass. 359, 366 (1977).

The claim that, because of his stated public position on abortion rights, the Attorney General must have colluded in the secret preparation of the stipulations lacks substance. In fact, the form of the stipulations virtually assured that the plaintiffs' all-out attack on the parental consent and judicial bypass provisions of § 12S would fail, as this opinion shows. MCFL's contention amounts simply to a challenge to trial tactics, tactics that were largely successful.

There is no reason to exercise our discretion under Mass. R. Civ. P. 24 (b), 365 Mass. 769 (1974), to permit MCFL to intervene. MCFL has filed a brief stating its position on the law. It has made no fact-based argument in its brief concerning the two-parent consent requirement of § 12S, but rather has argued that the judicial bypass makes unimportant any defect in the two-parent consent requirement. Intervention, as

opposed to status as a friend of the court filing a brief, is not needed to make that point.[15]

4. *Conclusion.* An order shall be entered in the county court denying the motion to intervene of the Massachusetts Citizens for Life, Inc. A judgment shall be entered in the county court declaring that the parental consent and judicial authorization provisions of G. L. c. 112, § 12S, do not violate the due process and equal protection provisions of the Constitution of the Commonwealth, except that the requirement that more than one parent give consent to the performance of an unmarried minor's abortion violates the due process provisions of the Constitution of the Commonwealth and that, therefore, § 12S shall be enforced as if it stated a requirement only of one-parent consent.

*So ordered.*

LYNCH, J. (dissenting, with whom O'Connor, J., joins). Today the court concludes that the provisions of G. L. c. 112, § 12S, which require a minor to seek the consent of both her parents before having an abortion, violates the due process provisions of our State Constitution. I agree with the dissent of Justice O'Connor, but write separately only to point to, what I regard as, a curious anomaly in the court's decision. A woman's right to choose to abort her fetus has been protected by the Federal Constitution since the Supreme Court discovered that right in *Roe* v. *Wade*, 410 U.S. 113 (1973). We are, of course, bound to follow the Supreme Court's interpretation of the Federal Constitution when confronted with a Massachusetts statute said to burden a minor's right of free choice. See art. 6 of the United States Constitution; *Doe* v. *Doe*, 365 Mass. 556, 560 (1974) (Massachusetts statute criminalizing abortion rendered inoperative by Supreme Court decision).

Our previous decisions involving a woman's right to an abortion rely almost exclusively on Federal precedent. See, e.g., *Framingham Clinic, Inc.* v. *Selectmen of Southborough,*

---

[15]Because of our denial of the motion of MCFL to intervene, we need not act on its motion that we accept a supplemental appendix for filing. We have allowed MCFL's motion to supplement the record and have also considered the plaintiffs' response.

373 Mass. 279, 287 (1977) (Federal precedent used to strike down town's bylaws prohibiting abortion clinics); *Doe* v. *Doe, supra* at 560-563 (Federal law relied on in denying estranged husband injunctive relief to prevent wife from obtaining abortion without his consent). I see no basis, however, and the court does not suggest one, for ignoring numerous Supreme Court decisions which have considered favorably the constitutionality of parental notification and consent statutes when a judicial bypass option is available. See *Planned Parenthood of Southeastern Pa.* v. *Casey,* 505 U.S. 833 (1992) (one-parent consent requirement with adequate judicial bypass mechanism); *Ohio* v. *Akron Ctr. for Reprod. Health,* 497 U.S. 502 (1990) (one-parent notice requirement with adequate judicial bypass mechanism); *Hodgson* v. *Minnesota,* 497 U.S. 417 (1990) (two-parent notice requirement with adequate judicial bypass mechanism); *Planned Parenthood Ass'n of Kansas City, Mo., Inc.* v. *Ashcroft,* 462 U.S. 476 (1983) (one-parent consent requirement with adequate judicial bypass mechanism); *Akron* v. *Akron Ctr. for Reprod. Health, Inc.,* 462 U.S. 416 (1983) (one-parent consent requirement with inadequate judicial bypass mechanism); *H.L.* v. *Matheson,* 450 U.S. 398 (1981) (two-parent notice requirement when minor is unemancipated with no judicial bypass mechanism); *Bellotti* v. *Baird,* 443 U.S. 622 (1979) (hereinafter *Bellotti II*) (two-parent consent requirement with inadequate judicial bypass mechanism); *Bellotti* v. *Baird,* 428 U.S. 132 (1976) (hereinafter *Bellotti I*) (two-parent consent requirement but Court abstained from considering adequacy of judicial bypass mechanism); *Planned Parenthood of Central Mo.* v. *Danforth,* 428 U.S. 52 (1976) (one-parent consent requirement with no judicial bypass mechanism). See also *Barnes* v. *Mississippi,* 992 F.2d 1335 (5th Cir.), cert. denied, 510 U.S. 976 (1993) (two-parent consent requirement with adequate judicial bypass mechanism).

In *Hodgson* v. *Minnesota, supra* at 497, Justice Kennedy, joined by Chief Justice Rehnquist, Justices White and Scalia, in upholding a two-parent notification statute, wrote that "the by-pass procedure comports in all respects with our precedents." Justice O'Connor also wrote, "In a series of cases, this Court has explicitly approved judicial bypass as a means of tailoring a parental consent provision so as to avoid unduly burdening the minor's limited right to obtain an abor-

tion. See [*Bellotti I, supra* at 147-148]; *Planned Parenthood of Central Mo.* v. *Danforth, [supra]; [Bellotti II, supra* at 642-644] (opinion of Powell, J.)." *Hodgson* v. *Minnesota, supra* at 461 (O'Connor, J., concurring in part and concurring in the judgment in part). Indeed, in *Bellotti II, supra* at 649, the Court stated that it was not persuaded that the requirement of obtaining both parents' consent unconstitutionally burdens a minor's right to seek an abortion. Thus, the Court concluded "that if the State decides to require a pregnant minor to obtain one or both parents' consent to an abortion, it must also provide an alternative procedure whereby authorization for the abortion can be obtained." *Id.* at 643. See *Barnes* v. *Mississippi, supra* at 1338-1341 (relying on Supreme Court decisions to conclude that statute requiring consent of two parents, combined with adequate judicial bypass mechanism, does not place "undue burden" on a minor's right to abortion).

The court today all but ignores this precedent and with minimal discussion concludes that the two-parent consent provision in G. L. c. 112, § 12S, violates our State Constitution despite the presence of a valid judicial bypass provision.[1] Essentially then, in the interests of protecting a federally created right, the court concludes that our State Constitution prohibits a practice that the Federal Constitution would permit without advancing any reason why this must be so.

I do not dispute that this court is free, in appropriate circumstances, to decide that the Massachusetts guarantee of due process is more extensive than its Federal counterpart. There are, however, "the best of reasons in policy and logic why the court should not do so in this case." *Moe* v. *Secretary of Admin. & Fin.*, 382 Mass. 629, 663 (1981) (Hennessey, C.J., dissenting). The words of our Constitution should not be so lightly turned in the direction most favored by contemporary trends. As Justice Scalia said in his separate opinion in *Hodgson* v. *Minnesota, supra* at 480 (Scalia, J., concurring in the judgment in part and dissenting in part), "[o]ne will search in vain the document we are supposed to be construing for text that provides the basis for the argu-

[1]There does not seem to be any dispute that the bypass mechanism comports in all respects with the criteria established by the Supreme Court in *Ohio* v. *Akron Ctr. for Reprod. Health*, 497 U.S. 502, 511-513 (1990); and *Bellotti* v. *Baird*, 443 U.S. 622, 643-644 (1979).

ment over these distinctions; and will find in our society's tradition regarding abortion no hint that the distinctions are constitutionally relevant, much less any indication how a constitutional argument about them ought to be resolved." See *Zayre Corp.* v. *Attorney Gen.*, 372 Mass. 423, 433 (1977) ("principle of judicial restraint includes recognition of the inability and undesirability of the judiciary substituting its notions of correct policy for that of a popularly elected Legislature").

There can be no doubt that striking down a statute as unconstitutional is a dramatic exercise of judicial power to be used sparingly. See *Commonwealth* v. *Lammi*, 386 Mass. 299, 301 (1982). I am at a loss to find any explanation why we take such a drastic step here. I would uphold the statute as written.

O'CONNOR, J. (dissenting, with whom Lynch, J., joins). General Laws c. 112, § 12S, provides with certain exceptions that an unmarried minor may not obtain an abortion in the Commonwealth without the consent of both of her parents or the authorization of a Superior Court judge. The court holds that § 12S violates the due process provisions of the Massachusetts Constitution unless it "be enforced as if it stated a requirement only of one-parent consent." *Ante* at 600. Perhaps if § 12S were to require only one-parent consent or judicial authorization, it would be constitutional. However, I do not agree that the requirement, with specified exceptions, of two-parent consent or judicial authorization, as the statute is written, violates the Commonwealth's Constitution. I would order that the statute be enforced according to its terms.

In order to obtain an abortion in the Commonwealth, an unmarried minor is not required to seek or obtain parental consent. Section 12S simply provides for two-parent consent as an alternative to judicial approval, which is not difficult to obtain. As the court notes, *ante* at 592 n.6, "[t]ypically, the minor is at the court house for approximately two hours and before a judge for between fifteen and thirty minutes." "[T]he judicial response to such requests, once made, is expeditious." *Ante* at 592. "[T]he proceeding is confidential and lawyers are available to process applications through the court at public expense. The record shows that judicial approval is nearly a

certainty. There is no showing that judicial procedures are not carried out promptly in this Commonwealth, or that the necessity of seeing a judge, in spite of emotional concerns such as fear or nervousness, have deterred young women who want abortions from obtaining judicial authorization . . . ." *Ante* at 592.

As the court recognizes, a significant legislative reason to provide two-parent consent as an option to easily obtained judicial authorization is to encourage dialogue between the parents and the minor so as to give real meaning to the minor's constitutional right to choose between aborting the fetus and bringing it to term. The right to choose has little value if the decision to be made is based on immaturity, inexperience, stress, fear or panic, unaided by information and advice that concerned parents will frequently give regarding the values at stake and the short and long-term ramifications for the minor and others of that important decision. Choice — free choice — implies the need for the kind of information and advice that responsible parents are likely to provide if given the opportunity. This, of course, is an important legislative concern. As the court says, "The State has an obvious interest in the welfare of minors and in the promotion of the interests of parents in the care and upbringing of their children," *ante* at 591; and "[t]he State has an independent interest in assuring that the decision to have an abortion is free and considered . . . ." *Ante* at 594.

Despite the unassailable fact that a genuine right to choose requires information and consideration to a depth commensurate with the gravity of the decision to be made, and despite the further fact that concerned parents are a likely and legislatively preferred source of such assistance to their unmarried minor child who must decide whether to have an abortion — a most serious decision — and despite the fact that the State has a genuine interest in the welfare of minors and in promoting parental involvement in their children's upbringing, and despite the fact that alternative judicial approval is quick, free, and virtually assured, the court somehow concludes that § 12S's "requirement that, with certain exceptions, a pregnant unmarried minor must obtain the consent of both parents to her having an abortion, or else must seek judicial authorization, lacks sufficient justification to overcome the burden that the two-parent consent requirement places on the minor's constitutional right to choose."

*Ante* at 595-596. In my view, the statute's requirement that both of the unmarried minor's parents must consent, if both are available,[1] or judicial authorization of the minor's abortion must be obtained, does not burden the minor's right of free choice. Instead, it supports and promotes that right and gives it substance by encouraging, but not requiring, the minor to obtain meaningful assistance in dealing with a very personal and serious challenge.

The court states:

> "The two-parent consent requirement clearly applies in circumstances in which there can be no justification for burdening the minor's constitutional right to choose an abortion. If, for example, the parents have never married and have never lived together and one or both parents have never supported the child, or one or both have abused the child, the two-parent consent requirement stated in § 12S may nevertheless be applicable. Section 12S even seems to require two-parent consent to an abortion where the minor has been impregnated by her father. In such cases, neither the interest in assuring the free and considered choice of the minor nor the interest in assuring the minor's welfare is served by requiring the consent of both parents. The two-parent consent requirement operates only as a burden in such cases, a burden uncompensated by the further assurance of any interest the State may legitimately insist on."

*Ante* at 596. It is clear to me that, in any of the circumstances hypothesized by the court, the unmarried minor's right to choose is especially vulnerable if the consent of one parent, for instance the parent who has never supported the child financially or in any other way, will permit the abortion to occur. That parent has already shown his or her disinterest in the child's well being. He or she cannot be expected to give the unmarried minor the type of information and counsel needed to give the minor's right of choice the vitality it needs if that right is to be truly honored. So too, the consent of the

---

[1]General Laws c. 112, § 12S, provides in relevant part: "If one of the pregnant woman's parents has died or is unavailable to the physician within a reasonable time and in a reasonable manner, consent of the remaining parent shall be sufficient. . . . If the pregnant woman's parents are divorced, consent of the parent having custody shall be sufficient."

parent who has impregnated the minor is hardly likely to be anything other than his move to further his own interest. It would be naive to assume that numerous unmarried minors, immature, uninformed about abortion and all its implications, and panicked by unintended pregnancy, would not seek the consent only of the parent who would not care and would give consent without counsel, or of the parent whose selfish interests would be served by his consenting to the proposed abortion. It is only by requiring two-parent consent (as an alternative to judicial approval, frequently referred to as judicial bypass) that the minor is inevitably led to dialogue with the other parent, which may be instructive, or dialogue with a judge. Surely, the State's interest in the welfare of minors, including the minors' right to an informed choice between abortion and carrying to term, as well as in the promotion of the interests of both parents in the care and upbringing of their children, justifies such a rule. Surely, the Legislature did not exceed its constitutional powers in recognizing and promoting the State's interest — a critical one indeed — by enacting G. L. c. 112, § 12S.

Relying in part on *Hodgson* v. *Minnesota,* 497 U.S. 417 (1990), the court concludes that "[t]he burden that § 12S places on a minor to seek and obtain the consent of both parents can force her, even when one parent consents, to turn to the judicial bypass for relief. That process admittedly imposes delay and emotional stress on such a minor. To require that a minor follow such a process when the purpose of parental consent is fulfilled by the consent of one parent is to burden the minor's constitutional rights without adequate justification." *Ante* at 598. It is worthy of comment that § 12S does not require an unmarried minor seeking an abortion (perhaps because of immaturity, panic, and lack of information) to seek two-parent consent before seeking judicial authorization. The minor is statutorily entitled to seek judicial authorization as a first step. In any event, the process to which the court refers would appear to impose a minimum of delay in consulting with a second "available" parent and, if necessary, promptly going to court for two hours. The delay is minuscule compared to the value of the information and guidance the minor might well receive for the first time from the second parent. Contrary to the court's reasoning, the purpose of parental consent, which is to educate and counsel

the unmarried minor so the choice whether to abort or carry to term will be truly informed and free, frequently will not be fulfilled by the consent of one parent. It defies human experience to suggest that the input of two parents will seldom, if ever, exceed the input of one. Indeed, it may only be as a result of consultation with a second parent that a minor concludes from what has been said that abortion does not simply terminate a potentiality of life or an expectancy thereof but that, while the fetus resides in its mother's womb the fetus takes nourishment and grows, and early in the pregnancy the fetus has a readily detectable heartbeat. The minor may conclude from what she has been told by the second parent that abortion terminates a human life. As a result, the minor may choose life. "A woman considering abortion faces 'a difficult choice having serious and personal consequences of major importance to her own future — perhaps to the salvation of her own immortal soul.' " *Planned Parenthood of Southeastern Pa.* v. *Casey,* 505 U.S. 833, 916 (1992) (Stevens, J., concurring in part and dissenting in part), quoting *Thornburgh* v. *American College of Obstetricians & Gynecologists,* 476 U.S. 747, 781 (1986) (Stevens, J., concurring). As a further result, the minor may avoid a disabling sense of guilt and grief that otherwise might occur.

Like the court, I too rely on *Hodgson* v. *Minnesota, supra,* although my reason for doing so differs from the court's reason. I do so because that decision stands for the proposition that a provision of the relevant Minnesota statute requiring two-parent notification or, in the alternative, a judicial authorization procedure identical in every significant way with the procedure provided by G. L. c. 112, § 12S, fully satisfies the requirements of the United States Constitution. The Court so held. That being so, and there being no relevant difference in the text or history of the United States and Massachusetts Constitutions, *Hodgson* is persuasive authority for the proposition that § 12S is constitutional as written.

In *Hodgson,* the Court concluded that Minnesota's two-parent notice law *without judicial bypass* was unconstitutional. The Minnesota statute also provided, however, that if the two-parent notice requirement were to be invalidated, the same notice requirement would be effective unless the pregnant minor were to obtain a court order permitting the abortion to proceed. Minn. Stat. § 144.343(6) (1988). The

United States Court of Appeals for the Eighth Circuit sustained this portion of the statute, in effect a two-parent notice requirement with a judicial bypass. "Five Members of the Court, the four who [joined Justice Kennedy's opinion] and Justice O'Connor, agree[d] with the Court of Appeals' decision on this aspect of the statute. As announced by Justice Stevens, who dissented from this part of the Court's decision, the Court of Appeals' judgment on this portion of the statute [was] therefore affirmed." *Id.* at 481 (Kennedy, J., with whom Rehnquist, C.J., White, J., and Scalia, J., joined, concurring in part and dissenting in part). In her separate opinion, Justice O'Connor stated that a requirement of two-parent notice or judicial authorization identical in all relevant respects with § 12S "passes constitutional muster because the interference with the internal operation of the family required by [the two-parent notice requirement without the judicial bypass] simply does not exist where the minor can avoid notifying [or obtaining the consent of] one or both parents by use of the bypass procedure." *Id.* at 461 (O'Connor, J., concurring in part and concurring in the judgment in part). Until today, no court of last resort has declared unconstitutional a parental-consent statute like § 12S which contains an appropriate judicial bypass procedure.[2]

The court says, *ante* at 596 n.11, "Several States have no provision at all concerning parental consent to an abortion. Most States that have a provision for parental consent require the consent of only one parent. Of the States that have a two-parent consent provision, almost all do not enforce it or have been enjoined from enforcing it. See Report of the American Medical Association's Council on Ethical and Judicial Affairs, Mandatory Parental Consent to Abortion, 269 JAMA 82, 85 (1993)." For the purposes of this discussion, I shall assume that the article's information is current and accurate. In any event, the routes taken by the Legislatures of other States

---

[2]In *In re T.W.*, 551 So. 2d 1186 (Fla. 1989), the Supreme Court of Florida considered the constitutionality of a State statute, Fla. Stat. Ann. § 390.001 (4) (a) (Supp. 1988), requiring parental consent before a minor could receive an abortion. While that statute did provide for a judicial bypass procedure, that procedure made no provision for a lawyer for the minor or for a record hearing. *Id.* at 1196. The court, relying on the Florida Constitution's right of privacy and noting the aforementioned procedural infirmities of the judicial bypass mechanism, held the statute unconstitutional.

with respect to parental consent are irrelevant to the question before the court, which is whether G. L. c. 112, § 12S, the statute enacted by the Massachusetts Legislature, complies with the Massachusetts Constitution. Also irrelevant is whether almost all of the States that have a two-parent consent provision do not enforce it or have been enjoined from enforcing it. Statutes, unlike G. L. c. 112, § 12S, that lack a satisfactory judicial bypass provision violate the United States Constitution and cannot be enforced. In any event, whether other States do or do not enforce their laws sheds absolutely no light on whether G. L. c. 112, § 12S, survives Massachusetts constitutional scrutiny.

For all the reasons I have given, I respectfully dissent from the court's opinion. I would hold that G. L. c. 112, § 12S, is fully constitutional as enacted.